(71 South. 792)

No. 21795.

CARTER v. VEITH et al.

(April 24, 1916. Rehearing Denied May 22, 1916.)

*(Syllabus by the Court.)*

MARRIAGE ☞54—VALIDITY—COLLATERAL ATTACK.

Marriage between persons of the white and colored races is prohibited in this state, as a matter of public order and policy, and such a contract is absolutely null, requires no direct action to set it aside, and may be attacked by the party to whom it is opposed by way of exception or defense, whenever and wherever it is set up.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 93–103, 105, 106, 109; Dec. Dig. ☞54.]

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mrs. Georgia Carter against Mrs. Philip Veith and others. From a judgment for defendants, plaintiff appeals. Judgment annulled, and case remanded.

Florence Loeber, of New Orleans, for appellant. Johnston Armstrong, of New Orleans, for appellee Mrs. Veith. Legier & Gleason, of New Orleans, for appellee Mary Vivian Carter.

Statement of the Case.

MONROE, C. J. Plaintiff brought this suit as "Mistress Georgia Carter," and, being called on to declare whether she was married or unmarried, declared that she was unmarried. On the trial it was shown that a marriage had been celebrated between her

and Charles F. Mermellion, in Covington, La., on July 15, 1912. She then offered evidence the purpose of which was to show that, though she is a white woman, Charles F. Mermellion is a man of color.

It was admitted:

"That at the time the marriage ceremony was performed by the minister under a license declaring both parties to be white persons, and also that the marriage at that time ·was in good faith, without knowledge of the defect subsequently discovered."

Defendants objected that the marriage could not be attacked collaterally. The trial court sustained the objection, and dismissed the suit "for want of authority in the plaintiff to stand in judgment." Plaintiff has appealed.

### Opinion.

The ruling complained of was erroneous. Our law declares that: .

"Marriage between white persons and persons of color is prohibited, and the celebration of all such marriages is forbidden and such celebration carries with it no effect and is null and void." Act 54 of 1894.

Civil Code 1825, art. 95, contained a similar prohibition in which the word "nullity" was used, but which did not contain the words "and such celebration carries with it no effect and is null and void." This court nevertheless, in a case quite similar to this, said:

"The prohibition contained in this article is one eminently affecting the public order. Hence the nullity declared by the same is absolute, and cannot be cured by ratification. The law is of that rigorous nature that it will not permit a marriage to exist between persons of two different races for a moment. No suit is needed to declare the nullity of such an union. Either party may disregard it, and neither can pretend to derive from it any of the consequences of a lawful marriage. Hence the defendant was at liberty to show the absolute nullity of the pretended marriage whenever it was opposed to her, without the necessity of having previously brought an action to annul that which our law declares can have no existence." Succession of Minvielle, 15 La. Ann. 342.

In Summerlin v. Livingston, 15 La. Ann. 519, there was involved mainly the settle-

ment of the community which had existed between Aaron Livingston and his deceased wife. The court said:

"At the threshold of the investigation * * * our attention is arrested by two bills of exception taken by the counsel for the defendant Livingston. Both of these relate to a ruling of the district judge with regard to the right of the surviving spouse to assail the validity of his marriage to the deceased. Application was made on the defendant's behalf to amend the original answer, in order to enable him to * * * prove that at the time of his marriage with the deceased the latter was a married woman, and had on that occasion been guilty * * * of bigamy."

The court held that the amendment should have been allowed, even although the defendant knew of her previous marriage at the time of his marriage to his deceased wife (which was not shown to have been the case), saying (inter alia):

" 'Persons legally married are until a dissolution of the marriage incapable of contracting another, under the penalties established by the laws of this state.' * * * The nullity of such a contract is absolute; as it contravenes the policy of the law, and, besides, subjects the guilty party to a criminal prosecution. Such nullities are not even susceptible of confirmation or ratification, whether express or implied. * * * Nor is it necessary that a direct action be instituted for the purpose of setting aside the contract; its nullity may be demanded by way of exception or defense. * * * No doubt, the parties entered into the bonds of matrimony; but, if one of them was at the time incapacitated by a previous marriage, the second contract, although clothed with the forms of law, was radically null and void. It is true that such a contract may produce civil effects; but this takes place by special provision of law, and only in favor of the party who acted in good faith, and in favor of the children born of the marriage. * * * "But even then the contract itself has in other respects no vitality; and in legal parlance the parties have never been married."

See, also, McCaffrey v. Benson, 38 La. Ann. 198; Dupre v. Ex'r of Boulard, 10 La. Ann. 411; Succession of Gabisso, 119 La. 704, 44 South. 438, 11 L. R. A. (N. S.) 1082, 121 Am. St. Rep. 529, 12 Ann. Cas. 574.

The case entitled "Succession of Francois Lacroix, on Question of Heirship," No. 6357 of the docket of this court (not reported),

has no immediate bearing upon the issues here presented; the question there considered being whether the child of a void marriage could take by inheritance from the father when the mother contracted the marriage in ignorance of the impediment.

It is therefore ordered that the judgment appealed from be annulled, and the case remanded to the trial court, to be there proceeded with according to law and to the view hereinabove expressed; defendant to pay the costs of the appeal, and those of the district court to await the judgment on the merits.

See dissenting opinion of O'NIELL, J., 71 South. 794.