Helen Ryan, plaintiff, on October 7, 1946, by authentic act, bought from Tony Rice the property known as a portion of Lot 5 of the Gilbert Darensbourg's Place at Killona, St. Charles Parish. In the act Tony Rice, the vendor, declared his marital status to be: "* * * married but once, and then to Azelia Berthelmy, from whom he was divorced by a judgment of the 24th, Judicial District Court." *Page 468 
Helen Ryan, the purchaser, invoking the provisions of Act No. 298 of 1938, known as the Share Croppers Act, brought this action seeking the eviction of Azelia Barthelmy, the defendant, from the property, alleging that she is occupying it without the consent or permission of plaintiff, and that there is no agreement existing between them for occupancy, and that Azelia Barthelmy had failed to comply with the written demand to vacate, delivered to her in accordance with the requirements of the act. A rule was issued and served upon the defendant ordering her to show cause why she should not be condemned to vacate the property.
The sole grounds of defense are that the property has been the residence of defendant for more than 28 years and that before the sale to Helen Ryan, defendant, who styled herself as the wife of Tony Rice, caused to be recorded in the mortgage records of St. Charles Parish on February 28, 1937, a declaration under the provisions of Act No. 35 of 1921, Ex.Sess., to the effect that the property is "a family home," and that, therefore, the sale by Tony Rice to Helen Ryan on October 7, 1946, in which she did not join, is null and void.
After a trial of the rule on its merits judgment was rendered condemning Azelia Barthelmy to dispossess herself of the property within 24 hours. She has appealed from the judgment.
Counsel for appellant first contends that she has been in the actual, physical and peaceful possession of the premises for more than 28 years under her recorded homestead declaration, and argues that whatever rights Helen Ryan has in the property should be tested in a petitory action and not determined on a rule for possession.
Act No. 298 of 1938, Sec. 1, provides:
"* * * That when any share-cropper, half hand, day laborer, or any occupant of land-holding through the accommodation of the owner, or any other occupant other than a tenant or lessee,
shall be in possession of any house, building or landed estate, after the purpose of such occupancy and possession shall have ceased and terminated, whether for reason of breach or termination of contract, or otherwise, and the owner of such house, building or landed estate so occupied and possessed, or his agent, shall be desirous of obtaining possession of said premises, he shall demand and require in writing such occupant or possessor to remove from and leave the same, allowing him five calendar days from the day such notice is delivered." (Italics ours.)
[1] The operation of the act is limited to matters where the occupant sought to be ejected is in illegal possession (Brown v. Weldon, La. App., 199 So. 620) and it is the intendment of the act to spare a land owner the vexation of bringing a petitory action to eject an illegal possessor. Duvic v. Home Finance Service, La. App., 23 So.2d 790, 791.
[2] The record herein contains no transcription of the testimony of the witnesses given upon the trial of the rule, nor does it contain a note of evidence or a statement of facts prepared in accordance with the provisions of Code Prac. arts. 602 and 603. With the record in such condition a strong presumption arises that the court had received competent and adequate evidence such as would serve as a basis for the judgment rendered. Stout v. Henderson, 157 La. 169,102 So. 193; Ansley v. Stuart, 123 La. 330, 48 So. 953; Succession of Chas. M. Pilcher, 39 La. Ann. 362, 1 So. 929; Donaldson v. Sheridan, 11 La. App. 498, 124 So. 193; W. T. Rawleigh Co. v. Freeland et al., La. App., 16 So.2d 489.
[3] In his reasons for judgment the trial judge declared:
"* * * The Court is convinced that the defendant herein is of the colored or negro race, and that her said husband, Tony Rice, who acquired the property during the supposed marriage and sold same without her concurrence, is of the white or caucasian race, * * * "
There is nothing which even remotely indicates that there is error in this conclusion.
The legal question poses itself whether a community of acquets and gains prevailed between Azelia Barthelmy and Tony Rice, for if such did exist the property involved here would have been an asset thereof, *Page 469 
and by virtue of her declaration recorded in the mortgage records of St. Charles Parish, Tony Rice would not have had the right or capacity, without her concurrence, to sell the property to Helen Ryan.
Counsel for the defendant, both in his brief and in oral argument, adopts the position that the marriage between Tony Rice and Azelia Barthelmy cannot be collaterally attacked in this proceeding, and that until it is dissolved in a direct action of nullity Azelia Barthelmy is to be considered the wife of Tony Rice, and argues that we should recognize her community rights in the property.
With this contention we do not agree. Civil Code, art. 94, provides in part:
"* * * Marriage between white persons and persons of color is prohibited, and the celebration of all such marriages is forbidden and such celebration carries with it no effect and is null and void."
Civil Code 1825, art. 95, which contained provisions prohibiting miscegenous marriages, was discussed by the Supreme Court in Succession of Minvielle, 15 La. Ann. 342. The Court there said:
"The prohibition contained in this article is one eminently affecting the public order. Hence the nullity declared by the same is absolute, and cannot be cured by ratification. The law is of that rigorous nature that it will not permit a marriage to exist between persons of two different races for a moment. No suit is needed to declare the nullity of such a union. Either party may disregard it, and neither can pretend to derive from it any of the consequences of a lawful marriage. Hence the defendant was at liberty to show the absolute nullity of the pretended marriage whenever it was opposed to her, without the necessity of having previously brought an action to annul that which our law declares can have no existence."
The last expression of the Supreme Court on the matter under consideration is to be found in the case of Carter v. Veith et al, 139 La. 534, 71 So. 792, where the Court observed in the syllabus:
"Marriage between persons of the white and colored races is prohibited in this state, as a matter of public order and policy, and such a contract is absolutely null, requires no direct action to set it aside, and may be attacked by the party to whom it is opposed by way of exception or defense, whenever and wherever it is set up."
The union of Rice and Azelia Barthelmy was contracted in the teeth of the prohibition forbidding such, and it is null and void and can be the subject of an attack in any manner by any person whenever his interest requires that an attack on it be made. The marital community never existed between the parties; no legal effects whatever can flow from the purported marriage.
Rice purchased the property in his own name and under the facts found by the trial court, and the law, the family home declaration filed by Azelia Barthelmy is without effect and it is our conclusion that she is unlawfully occupying the property.
The judgment appealed from is affirmed.
Affirmed.