167 So.2d 475 (1964)
Mrs. Gertrude V. TODT
v.
Mrs. Giovanni SANTANI.
Mrs. Gertrude V. TODT
v.
Lindberg SANTANI.
No. 1492.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1964.
Rehearing Denied October 7, 1964.
*476 Midlo & Lehmann, Rene Lehmann, New Orleans, for plaintiff-appellant.
Wilmer G. Hinrichs, New Orleans, for defendants-appellees.
*477 Before SAMUEL, HALL and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tempore.
Mrs. Gertrude V. Todt claiming ownership of certain property in Jefferson Parish, referred to herein as Square 17 in the Town of Lafitte, brought separate actions against Mrs. Giovanni Santani and her son, Lindberg Santani (also spelled Santini), under the provisions of LSA-C.C.P. art. 4701 et seq. Specifically the suits seek by summary process to have the two defendants evicted from a portion of Square 17 on which defendants have built houses in which they presently reside. The cases were consolidated for trial in the District Court and for argument here.
Answers were filed and after the completion of the trial, the defendants filed identical exceptions of (1) non-joinder of Lloyd Hertz, an alleged indispensable party, and (2) no cause or right of action. Judgments were rendered on the merits in favor of defendants dismissing the rules for reasons assigned in written opinion. From these judgments the plaintiff has appealed.
The reasons upon which judgments were rendered adversely to plaintiff, as stated in the trial judge's opinion, were, in substance, that the defendants were not "occupants" of the land in question as defined by LSA-C.C.P. art. 4704 and that they do not occupy the property by "permission or accommodation of the owner." The court found that this occupancy was "with the knowledge and consent of another claimant to the property [Lloyd Hertz], and was not given by plaintiff or any prior owner in his chain of title, or by another occupant." He held that the defendants never recognized or occupied the property under plaintiff's title and hence the provisions of LSA-C.C.P. arts. 4702 and 4704 did not apply and the plaintiff could not pursue this remedy. The correctness of these findings of fact and law is the question now before us.
The facts presented in the record are by no means clear as they relate to the defendant Mrs. Santini. There is considerable contradiction of the witnesses, particularly with regard to the initial authority or permission upon which she moved onto the property in 1941. There is less confusion of fact regarding the defendant Lindberg Santini.
The plaintiff-appellant, Mrs. Gertrude V. Todt, acquired by purchase from Albert Pizani, September 30, 1952, certain property including Square 17 in the Town of Lafitte. There is no filing nor verified instrument in the record from which we can determine with any certainty from whom or when Pizani acquired the ownership. There is evidence however that Pizani leased the property and paid a nominal rent thereon for a number of years before he is alleged to have bought it. Mr. Pizani testified that he bought the property in 1948, but there is evidence before us that Pizani, as he testified, had some right or claim to possession by lease prior to and after 1941.
Mr. Pizani was not a very convincing witness, but his wife, Mrs. Emma Adams Pizani, was much more positive and testified that she was familiar with the property her husband sold to Gertrude Todt in 1952, and that Mrs. Santini had a house there built in 1941, at which time the Pizanis were renting the property from a Mr. Livaudais, not otherwise identified. All of this was before Pizani bought the property. She testified that she collected $1.25 per month from Mrs. Santini for about eight months. Under cross-examination, she was rather positive that the payment was for the privilege of putting her house on the property and not for the house itself. In conflict with this was testimony by other witnesses that whatever rental Mrs. Santini paid Pizani was for storing furniture in a house owned by him on other property.
Mrs. Santini denied that she ever paid Mr. Pizani rent except for a house on Tin Road to which she moved her furniture while her house was being built in 1941, and *478 that she never paid rent to anybody at all on her present location. She said further that when she came to Lafitte Mr. Hertz had a cow, hogs, chickens and ducks "and all kinds of fences around there," and "Well, I did have his permission to move there and he also helped us with the house." Some time later, after 1952, her house was moved back a short distance, apparently within the confines of the existing fences at the instance of Police Juror Nunez, to make room for a levee along the bayou. This in the language of Mrs. Santini "was after Mr. Todt had bought that land back of my house." Her reference was to Maurice Todt, brother of the plaintiff and property owner, Gertrude Todt.
It is reasonably certain that Maurice Todt looked after the property for his sister and acted as her agent, and there was a discussion with him about a lease some years later after defendant Lindberg Santini had built his house further back on the property. The younger Santini indicated a willingness to take a lease or pay rent to Mr. Todt, but when his mother refused to do so, the subject was not pursued further.
Mr. Lloyd Hertz, who apparently owns property across 4th Street north of Square 17 and lives there at the corner of Marrero Street, claims to have a "camp" house at the center of 4th Street where it runs to the bayou. A roadway, originally built by him without regard to the survey but in the most convenient place, leads approximately along 4th Street to his camp house. Fences have been placed to the south of this road, or 4th Street, on Square 17, but the testimony is conflicting as to who built them. It appears, however, that Mr. Hertz made use of them and had chickens, ducks, hogs, etc., on that side of the road on Square 17. Apparently Mrs. Santini's house was located south of 4th Street on Square 17 between the fence and Mr. Hertz's residence.
Mr. Hertz testified that when Mrs. Santini wanted to move from across the bayou "she came to get permission to live there, because I had my fences all there, my chicken house and all, and because she asked me if it would be good, you know, if I would let her move there to build a house and I said that would be okay, because she took all my stuff and put it on the opposite side to the north of my fence." This indicates that there was more than one fence and that Mrs. Santini moved within an enclosed area. Mr. Hertz said that she paid no rent to him saying, "I just gave her permission to move there."
The trial court held on the question of fact that the defendants' occupancy was with the permission or consent of Mr. Hertz, identified by the court as "another claimant to the property." Mr. Hertz admitted that he doesn't own the property but does claim it. In the absence of manifest error, we accept the findings of fact by the trial judge.
It is clear from the testimony that a neighborly relationship existed between the Santinis, the Pizanis, and later Mr. Todt. Both defendants testified to this, not in answer to direct questions, but spontaneously and voluntarily. That the Pizanis, and later the Todts, acquiesced in or by sufferance allowed the Santini family to occupy the property in question over a number of years without disturbing their occupancy is not disputed. This, however, does not amount to a "permission" or "accommodation" within the meaning of LSA-C.C.P. art. 4704. Article 4704 reads in part as follows:
"`Occupant' includes a sharecropper; half hand; day laborer; former owner; and any person occupying immovable property by permission or accommodation of the owner, former owner, or another occupant, except a mineral lessee, owner of a mineral servitude, or a lessee of the owner;"
The defendant Mrs. Giovanni Santini does not come within this definition of *479 "occupant," and therefore the remedy prescribed in Article 4702 is not the proper remedy for the plaintiff to pursue against this defendant. She is not precluded from pursuing the appropriate remedy.
There is less question about the occupancy of the defendant Lindberg Santini. He was a boy of about fourteen when he moved to this property with his family. Upon reaching manhood he married and continued to live on the property but in a separate house to the rear of his mother's. About 1953, after the plaintiff had bought the property in question, Lindberg Santini's house was badly damaged in a storm, and he rebuilt it some distance back and south of his mother's house. He admitted that he just selected this particular spot because it was a nice location and he thought it was all the same property. He has never asserted any claim to ownership. When asked, "Is your house on Mrs. Todt's property?" he answered, "I wouldn't know, but she claims it's hers, but I wouldn't know."
Lindberg Santini spoke well of Mr. Maurice Todt and said "he did have things that he brought there and we took care of them for him." When asked if he ever paid rent to anyone he answered, "No, I never did." "No, I was suppose to lease from Mr. Todt and when my mother wouldn't lease they wouldn't give it to me. They said they wouldn't give it to me." That was "about two years at least, or better, give or take more or less, you know." This would be about 1961. His relationship to Mr. Todt, brother and agent of plaintiff, is best summed up in his answer, Articles 9 and 10, as follows:

"9.
"Defendant avers that, prior to his present location, he had occupied a portion of ground nearer the bayou and to the north or east of his present location, and that he moved into the present location at the instance of the late Maurice Todt who requested that he "keep an eye on' and `run off' any trespassers who might go on to certain fenced land which allegedly belonged to the late Maurice Todt, but which said alleged land did not include the portion of ground presently being occupied by the Defendant.

"10.
"Before moving into his present location, the late Maurice Todt offered to execute a lease in favor of the Defendant for a rental of $5.00 per year, which Defendant declined for the reasons aforesaid which were then communicated to the late Maurice Todt, despite which facts the said Maurice Todt acquiesced in Defendant locating in his present place of residence as aforesaid."
Clearly, therefore, the defendant Lindberg Santini comes within the definition of "occupant" as set forth in LSA-C.C.P. art. 4704, and there is no question of the right of plaintiff to pursue the remedy provided in Article 4702 against him.
Defendants-appellees strongly urge that the plaintiff should be required to prove her title and insist upon a ruling on this issue, which was not passed on in the trial court. The contention is without merit. The case of Wooten v. Jones, 200 La. 333, 8 So.2d 46, upon which defendants rely, does not support their argument. The rationale of that case is thoroughly sound but is not apposite to the factual situation in the instant case. There the defendant attacked plaintiff's ownership on the ground that his deed was obtained through fraud and misrepresentation. The court illustrated the point with an hypothesis of forgery and its conclusion was very proper in holding that such an attack could not be barred on the theory that defendant was converting a summary action into an ordinary one. In the instant case there is no attack on plaintiff's title as such, which is prima facie, but *480 rather an attempt to require her to prove its validity. There is no allegation of fraud, misrepresentation or forgery, but the argument that there might be a missing link in her title. To allow this defense would, in effect, require her to convert the proceeding into a petitory action.
The jurisprudence is clear that the application of the articles, LSA-C.C.P. arts. 4702 and 4704 (which are substantially identical with the source act, 298 of 1938; LSA-R.S. 13:4911-12), is proper in cases of this kind. The very purpose of the law has been held repeatedly, to relieve the landowner of the cumbersome, vexatious and time consuming requirements of a petitory action. To hold otherwise would be to defeat the purpose and the clear intent of the law. Smith v. Smith, La.App., 156 So.2d 278; Lovecchio v. Graffagnini, 90 So.2d 694; Clements v. Billiot, La.App., 52 So.2d 268; Ryan v. Barthelmy, La.App., 32 So.2d 467; Crabtree v. Bordelon, La. App., 31 So.2d 890; Duvic v. Home Finance Service, La.App., 23 So.2d 790.
Defendants further contend that Lloyd Hertz has a prescriptive title based upon thirty years possession and is therefore a necessary party to this proceeding and that the court should have sustained the plea of non-joinder. This contention is also without merit. Mr. Hertz was fully aware of this proceeding and testified on behalf of defendants. If he asserts any claim to the property in question, there are adequate remedies in law available to him, and it is not incumbent on the plaintiff to provide him with a vehicle to attack her title, if indeed he has any such intention.
The judgment appealed from in this case against Mrs. Giovanni Santani (or Santini) is affirmed at plaintiff's cost. The judgment in the case against Lindberg Santani (or Santini) is reversed and judgment is now rendered in favor of Mrs. Gertrude V. Todt against Lindberg Santani (or Santini) as prayed for at his cost.
Affirmed in part; reversed in part.