401 So.2d 1060 (1981)
George J. CHAMPAGNE, Jr., et al., Plaintiffs-Appellees,
v.
Andrew BROUSSARD, et ux., Defendants-Appellants.
No. 8310.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
Rehearing Denied August 13, 1981.
*1062 Jo Ann Nixon, Lafayette, for defendants-appellants.
Champagne, Colomb & Brumbaugh, George J. Champagne, Jr., Lafayette, for plaintiffs-appellees.
Before CULPEPPER, FORET and LABORDE, JJ.
FORET, Judge.
Andrew Broussard and his wife, Mabel Solomon Broussard (appellants), appeal from a trial court judgment dismissing their possessory action and ordering them to vacate certain property.
George J. Champagne, Jr. and his wife, Yvonne Anderson; Vance J. Theriot and his wife, Gloria Royer; and Robert R. Laville, Sr. and his wife, Lois Theriot (appellees) instituted an eviction action naming appellants as defendants. Appellees claimed to have purchased certain property at public auction and that appellants refused to vacate the property.
Appellants then instituted a possessory action claiming that their possession of the property, from which their eviction was sought, had been disturbed by the institution of the eviction action and they sought to be maintained in possession.[1]
The trial court ordered the two actions consolidated for trial on the merits and then rendered judgment in favor of appellees in the eviction action and against appellants (plaintiffs in the possessory action).
Appellants appeal from that judgment and present two issues:
(1) Whether appellees' proper remedy for gaining possession of the land, on which appellants are presently living, is an eviction action;
(2) Whether appellants are in possession of that property.

FACTS
These two actions concern a tract of land containing some 47.5 arpents[2] located in rural St. Martin Parish. Arsenne Solomon, Mabel Solomon Broussard's grandmother, acquired this land in November, 1925. The land is described in Arsenne Solomon's credit deed as:
"that certain tract of land situated in the fourth ward of the Parish of St. Martin, State of Louisiana, with all improvements thereon, containing forty-seven and one-half superficial arpents and bounded as follows to wit: North by A. F. Domengeaux, South by Cesaire Melancon, East by Public road, and West by Lucer Guidry.
We will refer to this land as the 47.5 arpent tract of land throughout the rest of this opinion.
*1063 Apparently, Arsenne Solomon donated this property to her eight children in September, 1936, giving each an equal undivided share. This transfer is termed a sale in some of the pleadings filed by the parties and a donation in others. The document evidencing this transfer was never introduced into evidence in the court below.
George J. Champagne, Jr. acquired an undivided 1/8 ownership interest in the property from two of Arsenne Solomon's grandchildren, who had inherited it from their father. Champagne brought an action to partition the land on February 19, 1971, and the trial court rendered judgment on July 2, 1971, ordering a partition by licitation. Champagne then sold his interest in the property to Vance J. Theriot before a public sale was held. A sheriff's sale was held on February 16, 1977, and the property was sold to Vance J. Theriot, George J. Champagne, Jr. and Robert R. Laville, Sr. for the sum of $63,000.00.
An action to annul the partition judgment, set aside the sheriff's sale, and recover damages was instituted on August 5, 1977, by Mabel Solomon Broussard, Louise Arsenne Solomon, Amelia Solomon Barber, Joseph Barber and Mary Solomon Dixon. Essentially, these petitioners argued that the partition judgment was an absolute nullity because they had not received service of process in the partition action and some of them had not been made defendants to that action. Further, they alleged that the partition judgment had been obtained by means of fraud and ill practices. The trial court dismissed petitioners' action, after trial on the merits.
The trial court found that no fraud or ill practices had been used in obtaining the partition judgment and that petitioners had notice that the partition proceedings were taking place, together with the possible consequences thereof. The trial court also found that the petitioners had acquiesced in the partition judgment and, therefore, were unable to demand that the judgment be annulled for vices of form, i. e., lack of service of process. We affirmed the trial court's judgment in an unpublished opinion.
The Louisiana Supreme Court, in Broussard v. Champagne, 376 So.2d 957 (La.1979), denied petitioners' application for writs in that proceeding with the following order:
"Writ denied. On the facts found by the court of appeal, we cannot say the result is incorrect. However, our denial is expressly without prejudice to any rights Mabel Solomon Broussard and Andrew Broussard may have to the property they acquired by deed, they not having been joined in the partition suit on the basis of their capacity as purchasers and they not having been named as defendants. La.C.C. Art. 2286.
SUMMERS, C. J. would deny the writ without qualification."
Appellees instituted an eviction action on March 28, 1980, against appellants based on the partition judgment, and the conveyance of the property to them at the sheriff's sale, together with the allegation that appellants refused to vacate the property.
Appellants instituted a possessory action on May 16, 1980, alleging that appellees' eviction action constituted a disturbance of their peaceable possession and enjoyment of a certain portion of the 47.5 arpent tract of land. They further alleged that they had acquired a "right to occupy" the property by the acquisitive prescriptions of ten years and thirty years.
The trial court granted appellees' motion to consolidate the two actions for trial on the merits, which was held on October 14, 1980. The trial court rendered judgment in favor of appellees and ordered appellants to vacate the property. The trial court dismissed appellants' possessory action and overruled their exception of prescription. Appellants were granted a suspensive appeal from the trial court's judgment. Appellees have answered the appeal and asked that the trial court's judgment be amended to order the issuance of a writ of possession, commanding the Sheriff of St. Martin Parish to eject appellants from the property.

IS AN EVICTION ACTION APPELLEES' PROPER REMEDY?
Appellees brought this eviction action against appellants in an attempt to expel *1064 appellants from a portion of the 47.5 arpent tract of land on which they were living and to have themselves (appellees) placed in possession thereof. The evidence shows that appellants constructed a house on the land some forty years ago and have lived in it ever since. They have also maintained some of the land around their home as their own private yard.
Appellants contend that an eviction action is an improper remedy for use by appellees in their attempt to gain possession of this portion of the 47.5 arpent tract of land. We agree.
Eviction is a proper remedy for use by a lessor, who wishes to obtain possession of the premises, when the lessee's right of occupancy has ceased. LSA-C.C.P. Article 4701. The evidence shows that a lessor-lessee relationship has never existed between appellants and appellees.
Eviction is also a proper remedy for use by an owner of immovable property, who wishes to evict the occupant therefrom, after the purpose of the occupancy has ceased. LSA-C.C.P. Article 4702 provides the basis for this remedy and was designed to give an owner of immovable property summary means to evict an occupant without fulfilling the burden and delay required in a petitory action. Rankin v. Garland, 392 So.2d 182 (La.App. 2 Cir. 1980); Skannal v. Jones, 384 So.2d 494 (La.App. 2 Cir. 1980); Todt v. Santani, 167 So.2d 475 (La.App. 4 Cir. 1964).
LSA-C.C.P. Article 4705 expressly states that the eviction procedure shall not be construed to conflict with the Louisiana Code of Civil Procedure articles relating to actions to determine ownership or possession. Rankin v. Garland, supra. Summary eviction procedure is not appropriate to try disputed title to property but is designed for situations where the possessor has no semblance of claim to title or possession. Foreman v. Luquette, 344 So.2d 1111 (La. App. 3 Cir. 1977); Clements v. Billiot, 52 So.2d 268 (La.App. 1 Cir. 1951); Ryan v. Barthelmy, 32 So.2d 467 (La.App. Orl.Cir. 1947).
The crucial issue is whether appellants are occupants within the meaning of LSA-C.C.P. Article 4704, which provides, in pertinent part:
"Occupant" includes a sharecropper; half hand; day laborer; former owner; and any person occupying immovable property by permission or accommodation of the owner, former owner, or another occupant, except a mineral lessee, owner of a mineral servitude, or a lessee of the owner;"
Appellants brought a possessory action in which they alleged that they are in possession of a certain portion of the 47.5 arpent tract of land. This possessory action was brought in response to appellees' attempt to evict them. The trial court found that,
"There was never any possession of any part of the 47.5 arpents of the quality that would be required for the commencement of the running of prescription...".
Since the possession required for the commencement of prescription is the same as that required for the possessory action, the trial court dismissed appellants' possessory action. See Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La. 1975).
In our opinion, the record establishes that the finding of the trial court that appellants never had possession of any portion of the 47.5 arpent tract of land is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
LSA-C.C Article 3426 defines possession as:
"Art. 3426. Possession, definition
Art. 3426. Possession is the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name."
LSA-C.C. Article 3436 provides:
"Art. 3436. Essentials of possession
Art. 3436. To be able to acquire possession of property, two distinct things are requisite:
1. The intention of possessing as owner.

*1065 2. The corporeal possession of the thing."
There can be no doubt that appellants have the corporeal possession of the house, in which they are presently living, and the land upon which the house was constructed. The evidence also indicates that appellants have maintained a certain amount of land surrounding their home, as a private yard, and that those who have cultivated land in the area have respected and treated it as such. Thus, appellants also have the corporeal possession of this land.
Natural possession, which may exist without title, is the corporeal detention of a thing, as by occupying a house or cultivating ground. See LSA-C.C. Articles 3428 and 3430; Norton v. Addie, 337 So.2d 432 (La.1976). To acquire the possession of property one must combine the intention of possessing as owner with the corporeal detention of the thing. Norton v. Addie, supra.
Appellants testified that they constructed their home on the 47.5 arpent tract of land with the permission of the owners thereof. The owners at that time were Louis Solomon, the father of appellant, Mabel Solomon Broussard, and the seven other children of Arsenne Solomon, who each owned an undivided one-eighth ownership interest in the land. Appellants' testimony indicates that they commenced their possession of the land, on which their home was constructed, as "precarious possessors". See LSA-C.C. Article 3556(25).
LSA-C.C. Article 3441 provides:
"Art. 3441. Possession for another; precarious possessor's inability to acquire legal possession
Art. 3441. Those who possess, not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, can not acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another."
LSA-C.C. Article 3446 provides:
"Art. 3446. Mere change of intention of precarious possessor
Art. 3446. Even if a person who commenced his possession of an estate for another, should entertain the intention of no longer holding for that other, but for himself, yet shall he still be presumed to hold possession for the person for whom he originally took it."
Appellants' status when they first moved onto the 47.5 arpent tract of land was that of sharecroppers with a certain percentage of the crops grown by them being given to the landowners. However, on March 13, 1945, appellants entered into a contract of sale with Cecilia Solomon (another of the eight children of Arsenne Solomon and the aunt of Mabel Solomon Broussard), which they believed conveyed to them the undivided one-eighth ownership interest of Cecilia Solomon in the 47.5 arpent tract of land.[3] Appellants testified that after they purchased what they believed was Cecilia Solomon's interest in the land, they began to keep for themselves the share of the crops that would have gone to her. Appellants also testified that they then had the intention of possessing the land as co-owners, which they actually believed they were. This intention of possessing the land as co-owners was reinforced when appellant, Mabel Solomon Broussard, inherited her father's undivided one-eighth ownership interest in the land.
We hold that LSA-C.C. Article 3446 sets up a rebuttable presumption that a person, who commences his possession of certain property as a "precarious possessor", *1066 retains that status, even if he should change his intention and begin to possess the property for himself as owner.
The fact that there can be a change in the character of one's possession was recognized in Thompson's Succession v. Cyprian, 34 So.2d 285 (La.App. 1 Cir. 1948), and Cole v. Martin, 343 So.2d 334 (La.App. 2 Cir. 1977), writ denied, 345 So.2d 506 (La. 1977). See LSA-C.C.P. Article 3512. Admittedly, these two cases were decided under the Louisiana Civil Code articles relating to acquisitive prescription. But, if it is possible that under certain circumstances the character of possession of a "precarious possessor" may be changed such that he may then acquire the ownership of the property by prescription, then surely under certain circumstances the character of possession of a "precarious possessor" may be changed such that he may then acquire the possession of the property.
We conclude that there are circumstances present in the case before us which changed the character of appellants' possession from "precarious" to possession of a certain portion of the 47.5 arpent tract of land for themselves. The first circumstance is the fact that appellant, Mabel Solomon Broussard, was a co-owner of the entire tract of land for a period of time after appellants' possession had commenced. The second circumstance is the fact that appellants, together with the co-owners, believed that they had purchased an undivided one-eighth ownership interest in the land from Cecilia Solomon.
We find that appellants had corporeal possession of that portion of the land on which their home was constructed and the surrounding yard. We further find that appellants combined this corporeal possession with the intention to possess that land as co-owners. Thus, appellants are in possession of that land. LSA-C.C. Article 3436, supra.

PROPER PROCEDURE: PETITORY ACTION
LSA-C.C.P. Article 3651 provides:
"Art. 3651. Petitory action
The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership."
The petitory action is the proper remedy for appellees to use in their attempt to gain possession of that portion of the 47.5 arpent tract of land which appellants are presently in possession of. The use of this remedy is further indicated by the fact that appellants are claiming the ownership of a portion of the land adversely to appellees.
Appellants' ownership claim is based on their alleged purchase of the ownership rights of Cecilia Solomon, as evidenced by the cash deed executed by them, and the following language found in the Louisiana Supreme Court's writ denial in Broussard v. Champagne, supra:
"... our denial is expressly without prejudice to any rights Mabel Solomon Broussard and Andrew Broussard may have to the property they acquired by deed, they not having been joined in the partition suit on the basis of their capacity as purchasers and they not having been named as defendants. LSA-C.C. Article 2286."
The trial court found that appellants have failed to prove that they acquired any ownership interest in the 47.5 arpent tract of land by purchase from Cecilia Solomon. We conclude that it was improper for the trial court to decide this issue of ownership in the context of an eviction proceeding.
Because of our decision herein, we pretermit any discussion of appellants' possessory action and the trial court's dismissal of that action. We expressly reserve to all parties involved in the actions before us the right to bring any and all lawful actions, which they believe necessary to assert or protect their rights to the possession and/or ownership of any portion of the 47.5 arpent tract of land.
*1067 For the above and foregoing reasons, the judgment of the trial court is reversed, and plaintiffs' suit is dismissed.
Costs of this appeal and on trial level are assessed against plaintiffs-appellees.
REVERSED.
NOTES
[1] This suit, # 8310 of this Court's docket, was consolidated at trial and on appeal with Andrew Broussard, et ux. v. George J. Champagne, Jr., et al., 401 So.2d 1067, a separate judgment will be rendered in Broussard v. Champagne concurrently with Champagne v. Broussard, #8310.
[2] An arpent is an old French unit of land area and is equal to approximately 0.85 acres.
[3] The following is the description as shown in the deed:

"All her rights, titles and interests in that certain undivided tract of land on the east side of Bayou Teche, situated in the Parish of St. Martin, State of Louisiana, containing Six and one half (6½) arpents, more or less and bounded as follows: North by Clovis Melancon, South by Clovis Melancon, East by Public road and West by Eugene Gravouillia, and it being part of the property inherited by her from her mother, Arsene Solomon.
It is agreed and understood that vendor reserves to herself, her heirs and assigns the one half of all oil, gas and other minerals that they be produced on said land."