546 So.2d 1296 (1989)
Beatrice Rogers MORRIS
v.
Charles Stanley SONNIER, Paula Bretz Sonnier, David Shea Nolan, Sr., and Tammy Lejeune Nolan.
No. CA 88 0772.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
Rehearing Denied August 17, 1989.
*1297 Stanley E. Branton, Charles E. Griffin, II, St. Francisville, for plaintiff-appellee.
W. Steven Mannear, Baton Rouge, for defendant-appellant.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
LOTTINGER, Judge.
This appeal arises from the issuance of a preliminary injunction to restrain defendants, Charles Stanley Sonnier, Paula Bretz Sonnier, David Shea Nolan, Sr., and Tammy Lejeune Nolan, from going on certain property, in which, plaintiff, Beatrice Rogers Morris, claims a half undivided full ownership. She claims the other half is subject to her usufruct. Mrs. Morris brought a possessory action, accompanied by a request for a temporary restraining order (TRO), preliminary injunction, and permanent injunction against defendants. Defendants answered that plaintiff had not met the statutory requirements for maintaining a possessory action, and reconvened with a request that their possession be maintained, that they be awarded damages for the interference in their possession, and that plaintiff show cause why the TRO should not be dissolved, and damages and attorney fees awarded for the wrongful issuance of the order. From a judgment issuing a preliminary injunction in favor of plaintiff, and denying defendants' reconventional demand, defendants appeal.

FACTS
On October 23, 1987, plaintiff brought a possessory action against defendants, *1298 alleging they had disturbed her possession on February 11, 1987, and that she had possession and enjoyment of the usufruct of the property for more than a year prior to the disturbance. Plaintiff alleged the disturbance occurred when a one-year hunting lease granted to Charles Stanley Sonnier and Paula Bretz Sonnier in February of 1986, expired, and defendants refused to vacate the premises.
The hunting lease was a verbal one, perfected by the payment of $500.00 in cash by the Sonniers. The lease was negotiated by plaintiff's son, Robert A. Morris, who was living in a trailer on the subject property until three or four weeks after the execution of the lease. In March of 1986, the Sonniers began going on the property and occupying the trailer on weekends.
Charles Sonnier testified that shortly after he entered into the lease arrangement he learned he could purchase an interest in the property from Robert Morris. Thus, on February 10, 1986, an act of cash sale was executed, whereby Robert Morris sold to Charles and Paula Sonnier the house trailer for $3,000.00 and all of his undivided interest in the subject property for $25,000.00.
On March 5, 1986, the Sonniers then sold to David Shea Nolan and Tammy Lejeune Nolan one-half of their undivided interest in the property for $12,500. Mr. Sonnier testified that he refurbished the trailer, hunted on the property, cut the grass, paid taxes and utilities, and stayed there nearly every weekend, when he would bring his children and let them swim in the creek. David Nolan testified he understood the interest he was buying was the inheritance of Robert Morris, and he knew Mrs. Morris was living on the property.
Mrs. Morris testified she had lived on the 120-acre tract since 1941 and was currently living there. She and her late husband, Joseph Lonnie Morris, had bought the property during their marriage and later re-acquired it in 1982 for $110,000.00. Upon the death of Mr. Morris in 1983, a judgment of possession was rendered, placing Thomas L. Morris, Robert A. Morris, and Beatrice Jane Morris DeLee in possession of the decedent's half of the property, subject to the testamentary usufruct of Beatrice Rogers Morris. On October 23, 1987, an amended judgment of possession was rendered, recognizing Mrs. Morris as the surviving spouse in community of the deceased, and as such, the owner of an undivided one-half interest in all property belonging to the community that existed between her and the deceased. The amended judgment also recognized her as the usufructuary of the other undivided one-half.
Upon the defendants' refusal to vacate the premises when their hunting lease expired in February of 1987, Mrs. Morris brought the current action.

TRIAL COURT
The trial court issued a TRO against defendants on October 23, 1987. No bond was set, nor was there a date set for termination of the order. Rather, a hearing was set for November 18, 1987, for defendants to show cause why a preliminary injunction should not be issued to replace the TRO. Although the defendants, in their answer, asked the court to dissolve the TRO, upon two days' notice to plaintiff, and for damages and attorney fees for the wrongful issuance of the order, the court set the hearing for defendants' request on the same date as that set for the preliminary injunction hearing, November 18. The order setting the hearing on defendants' motion was signed November 5.
Following the November 18 hearing, the trial court took the matter under advisement, and on November 19, continued the TRO until the court rendered its decision. On November 30, the court rendered its decision, replacing the TRO with a preliminary injunction. In written reasons for judgment, the court stated that plaintiff had quiet and undisturbed possession of the subject property until February of 1987, when defendants refused to vacate the premises. Prior to then, the court stated the defendants' possession was that of a *1299 lessee, and thus was not adverse to plaintiff's possession. The defendants' acquisition of the naked ownership in February of 1986 was not a "disturbance" of plaintiff's possession, the court concluded, inasmuch as the naked ownership was subject to plaintiff's usufruct. Since there was no disturbance until February of 1987 and plaintiff filed suit in October of 1987, the court held the suit was timely. The court found the defendants' motion to dissolve the TRO and for damages for the wrongful issuance of the order to be without merit.

ASSIGNMENTS OF ERROR
Defendants appeal, urging the trial court erred in:
1) Determining that plaintiff had undisturbed possession of the subject property without interruption until February, 1987;
2) Finding that plaintiff's possession was not disturbed by appellants until February of 1987;
3) Denying defendants' peremptory exception, raising the objection of prescription; and
4) Refusing to grant defendants' motion to dissolve the TRO and award damages and costs related thereto.

ASSIGNMENTS OF ERROR NOS. 1, 2, AND 3
In the case sub judice, the threshold issue is when was Mrs. Morris, the plaintiff, "disturbed" in her possession of the subject property?
To maintain a possessory action, La.Code Civ.P. art. 3658 requires that the possessor have "had possession of the immovable property or real right therein at the time the disturbance occurred;" that the possession has been quiet and without interruption for more than a year immediately prior to the disturbance; that the disturbance be one in fact or in law; and that the possessory action be brought within a year of the disturbance.
Defendants claim Mrs. Morris was disturbed in February of 1986 when they recorded the Act of Cash Sale of the ownership interest they acquired from Robert Morris, and engaged in acts of corporeal possession, such as spending weekends there. Plaintiff, however, claims defendants were possessing as lessees until their lease expired in February of 1987, at which time she requested they vacate the premises. When they refused, she brought the instant action in October of 1987. Thus, in the instant case, if the disturbance occurred in 1986, Mrs. Morris is barred by prescription from maintaining the suit.
A "disturbance" can be of two kinds: a disturbance in fact or a disturbance in law. La.Code Civ.P. art. 3659 defines a disturbance in fact as "an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment."
The same article defines a disturbance in law as "the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right." (Emphasis added by this court).
In the case before us, defendants contend the "disturbance in law" occurred when they recorded the 1986 Act of Cash Sale. However, they bought only a naked ownership when they bought Robert Morris' interest in the property, i.e. a five-twelfths, undivided interest in all the property forming the succession of Joseph Lonnie Morris, subject to the testamentary usufruct of the plaintiff.
As naked owners, they are precluded by La.Civ.Code art. 605 from interfering with the rights of Mrs. Morris, the usufructuary. Conversely, as the usufructuary, Mrs. Morris was entitled by La.Civ.Code art. 539 to possess the land, and to derive any of its *1300 utility, profits, or advantages. Accordingly, we hold the recordation of the act of sale was not a "disturbance in law" for the purposes of La.Code Civ.P. art. 3659 because the naked owners were not asserting a right "adversely to the possessor."
Defendants also argue their acts of corporeal possession constituted a disturbance in fact. While it is true that one who occupies property as a precarious possessor, such as a tenant, may change the nature of his possession, the case cited by defendants, Champagne v. Broussard, 401 So.2d 1060 (La.App. 3rd Cir.) writ denied, 409 So.2d 615 (La.1981), involved one who bought a "full" ownership interest.
Furthermore, a precarious possession terminates only upon notice. La.Civ.Code art. 3439 provides:
A co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner.
Any other precarious possessor, or his universal successor, commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing. (Emphasis added by this Court).
Thus, for the defendants to have changed the nature of their possession, they would have had to give the plaintiff actual notice because their possession began as lessees.
Defendants also urge that plaintiff's possession was not "uninterrupted" as required by La.Code Civ.P. art. 3658. "Interrupted" is defined by La.Civ.Code art. 3434 as the loss of the "right to possess." Such a right is lost upon abandonment, or if possession is not recovered within a year of the eviction, an eviction being the use of property by an "adverse" possessor according to its nature. See La. Civ.Code arts. 3434 and 3433, and Comment (d) to Code art. 3433. In the present case, the trial court found that the defendants were not "adverse" possessors. We agree. Rather, they were lessees and then naked owners, neither of which could be considered "adverse." Accordingly, we find that plaintiff did meet the requirements for maintaining a possessory action.

ASSIGNMENT OF ERROR NO. 4
Defendants further complain the TRO was wrongfully issued because it was issued without security or notice, and was extended longer than the 10-day limit. Consequently, defendants seek damages and attorney's fees.
La.Code Civ.P. art. 3603 provides that:
A. A temporary restraining order shall be granted without notice when:
(1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and
(2) The applicant's attorney certifies to the court in writing the efforts which have been made to give the notice or the reasons supporting his claim that notice should not be required.
B. The verification or the affidavit may be made by the plaintiff, or by his counsel, or by his agent.
La.Code Civ.P. art. 3604 provides that the order shall not exceed 10 days, except that it may be extended for periods not exceeding 10 days each. La.Code Civ.P. art. 3610 provides a TRO shall not issue unless security is furnished, except where it is dispensed with by law.
If it is decided the order was issued wrongfully, La.Code Civ.P. art. 3608 allows for damages and attorney's fees.
In the case at bar, the TRO was clearly issued in violation of the notice and duration requirements. We know of no law that dispenses with the notice requirement in such cases as this, although a movant, seeking injunctive relief as an ancillary remedy in a possessory action, is dispensed with proving irreparable harm. See Ryan v. Pekinto, 387 So.2d 1325, 1329 (La.App. 1st Cir.), writ denied, 394 So.2d 615, 616 *1301 (La.1980). Thus, possibly, it could be argued that there is less of a need for the notice requirement.
Nevertheless, the restraining order was still defective insofar as it violated the security and duration requirements. Although the preliminary injunction was issued without notice and the deposit of security by plaintiff, it is not too late to decide what, if any damages, are due defendants. In Succession of Vice, 385 So.2d 554 (La.App. 3rd Cir.), writ denied, 392 So.2d 1066 (La.1980), the court dissolved the TRO and extensions thereof, and awarded $500.00 in attorney's fees. The court emphasized that an action for damages for the wrongful issuance of a restraining order does not depend on the success or failure of the underlying dispute, which, in that case, was ultimately decided against the party awarded damages. In Khaled v. Khaled, 424 So.2d 370 (La.App. 2d Cir.1982), the court pointed out that although it was too late to dissolve the TRO because it had expired and was replaced by a preliminary injunction, it would nevertheless consider the issue of damages for the wrongful issuance of the order. The court, noting that a party seeking such damages must prove each and every element of damages claimed, concluded that the movant failed to carry his burden. The court refused to award attorney's fees because it observed that the preparation to dissolve the restraining order was also necessary for seeking the dissolution of the preliminary injunction. Khaled, at 372-373.
Having reviewed the record in the instant case, we do not find that defendants proved their damages. The preparation for fighting the restraining order would have been necessary for dissolving the preliminary injunction.
Accordingly, for the above and foregoing reasons, the decision of the trial court is affirmed at appellants' cost.
AFFIRMED.