C & C CLASSIC HOMES, INC.

VERSUS

JANET MARIE STEWART, INDIVIDUALLY
AND AS TUTRIX OF SARI COLLIER

NO. 24-CA-244

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE SECOND PARISH COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 139-093, DIVISION "A"
HONORABLE SHARLAYNE JACKSON PREVOST, JUDGE PRESIDING

December 30, 2024

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED**

 **FHW**
 **JJM**
 **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS



Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
C & C CLASSIC HOMES, INC.
	Irl R. Silverstein

COUNSEL FOR DEFENDANT/APPELLEE,
JANET MARIE STEWART, INDIVIDUALLY AND AS TUTRIX OF SARI
COLLIER
	Shermin S. Khan

**WICKER, J.**

This is an appeal by C&C Classic Homes, Inc. ("C&C") from a judgment of the Second Parish Court, Parish of Jefferson, denying the Rule for Possession filed by C&C against Janet Stewart, individually, and as Tutrix of Sarah Collier, erroneously referred to in the caption of these proceedings as "Sari" Collier. For the reasons stated below, we affirm.

## STATEMENT OF THE CASE

As indicated by the court below, this matter has an "extensive procedural history" that involves litigation in the Second (Jefferson) Parish Court, the Seventh Justice of the Peace Court (the "7th JP Court"), Jefferson Parish, and in the Twenty-Fourth Judicial District Court for Jefferson Parish (the "24th JDC"). The litigation involves a dispute over ownership and the right to possess the property located at 1214 Industry Street, Bridge City, Louisiana 70094 (the "Property"). Janet Stewart and her now deceased sister, Angelnell Stewart ("Stewart"),[1] have been purchasing the Property, pursuant to a duly recorded bond for deed contract (the "Bond for Deed"), entered into by them and Faith Hatch Hooter ("Hooter"), the then owner of the Property, on October 22, 2008. C&C claims to be the current owner of the Property by virtue of a General Warranty Deed (the "Warranty Deed") executed in its favor on December 19, 2022, by Hooter.

Thereafter, on January 4, 2023, Charlotte and Clayton Miller, representing themselves as "owners," posted an eviction notice on the Property. On January 11, 2023, the Millers filed an eviction action (the "Eviction Action") against "Dorothy Stewart and Occupants" in the 7th JP Court (Case No. 01112023) and a Rule to Show

---

[1] Angelnell Stewart had a daughter, Sarah Collier, who is a minor. Janet Stewart is the child's Tutrix.

Cause for Eviction was issued to "Dorothy Stewart and Occupants" on behalf of the Millers on the same date, setting an eviction hearing for January 18, 2023.[2]

On January 24, 2023, C&C filed a Rule for Possession (the "First Rule") against Stewart in the Second Parish Court.[3] That action, entitled *C&C Classic Homes, Inc. v. Janet Marie Stewart,* No. 138-180 "B," on the docket of the Second Parish Court, was transferred to the 24th JDC on March 2, 2023, for lack of subject matter jurisdiction. C&C filed a Motion for New Trial but on April 6, 2023, dismissed the First Rule.

On February 13, 2023, Stewart filed a Petition for Declaratory Judgment (the "Declaratory Judgment Action")[4] against the Millers (who had represented themselves in the Eviction Action as the owners of the Property) and Hooter, seeking to be declared the owner of the Property and to have the court enjoin the defendants from pursuing eviction or otherwise disturbing Stewart's peaceable possession of the Property. The Millers responded to the Declaratory Judgment Action by filing Exceptions of No Cause of Action, Improper Use of Summary Proceedings and Failure to Join an Indispensable Party, which were granted on June 13, 2023. Stewart appealed the 24th JDC 's judgment granting the exceptions to this Court.[5] By Judgment dated May 29, 2024, we reversed the district court's judgment, in part, and affirmed, in part, as amended, and held that Stewart had stated a cause of action for declaratory relief under La. C.C.P. art. 3654, but that she had failed to join an indispensable party – C&C – and should be given a chance to amend her petition to add C&C as a defendant.

On June 20, 2023, C&C filed another Rule for Possession against Stewart in the Second Parish Court (No. 139-093 "A") (the "Second Rule"), identical to the

---

[2] The record does not indicate contain any Ruling on the Eviction Rule, but it is clear from the record that no eviction occurred.
[3] C&C is wholly owned by the Millers.
[4] 24th JDC Docket No. 837-792, "L."
[5] *Stewart v. Miller,* 23-535 (La. App. 5 Cir. 5/29/24), 388 So.3d 1264.

First Rule, claiming ownership of the Property and requesting that Stewart be ordered to vacate the Property. In response, Stewart filed a Dilatory Exception of Prematurity, Peremptory Exception of No Right of Action and Peremptory Exception of No Cause of Action. On November 7, 2023, the court conducted a trial on the merits on Stewart's exceptions and C&C's rule for possession. Following the hearing, the court took the matter under advisement and the parties submitted post-trial briefs. On February 27, 2024, the court entered judgment overruling Stewart's exceptions and denying C&C's rule for possession. C&C timely filed a motion for devolutive appeal and this appeal followed.

## STATEMENT OF FACTS

Hooter was the owner of the Property, having acquired same by an Act of Donation Inter Vivos dated April 1, 2006, and recorded in the public records of Jefferson Parish on April 5, 2006 in COB 3162, pg. 966. Thereafter, Hooter listed the Property for sale with real estate agent, Joycelyn Cheramie, who ultimately also acted as Stewart's agent. Hooter executed a Property Disclosure Statement for the Property on December 4, 2007 (the "Disclosure Statement").

The Disclosure Statement was provided to Stewart on July 28, 2008. That same day, Stewart executed a Louisiana Residential Agreement to Buy or Sell (the "Purchase Agreement"), pursuant to which Stewart offered to purchase the Property in accordance with the terms and conditions thereof. The Purchase Agreement had a Bond for Deed Addendum, providing that the manner of purchase would be by Bond for Deed, with a purchase price of $150,000, $8,900 of which would be paid at closing as a down payment. The remaining balance would bear interest at the rate of 6.50%, amortized over 30 years, payable in monthly installments for five years, with a balloon payment of the remaining principal balance due at the end of five years. The Purchase Agreement, including the Bond for Deed Addendum was

24-CA-244                                            3

accepted by Hooter on August 4, 2008. Stewart paid Hooter $1,000 in conjunction with the Purchase Agreement.

A Bond for Deed was executed by Stewart and Hooter on October 22, 2008 and recorded in the public records of Jefferson Parish on October 24, 2008, at COB 3238, pg. 300; MOB 4388, pg. 504.[6] The Bond for Deed incorporated the terms of the Bond for Deed Addendum and provided for monthly payments of $891.85, plus a monthly escrow payment for property taxes and insurance of $326.92 to be made to the escrow agent (Southern Escrow and Title Services (the "Escrow Agent")). The first payment was to be due on November 20, 2008, with monthly payments being due on the 20th of each month thereafter for a period of 59 months, with the then remaining principal balance being due and payable on or before November 1, 2013. Upon full payment of the Purchase Price, title would be transferred to Stewart.[7]

Stewart made the down payment at closing and made monthly payments in accordance with the Bond for Deed to the Escrow Agent for several years.[8] By letter dated January 13, 2013 (the "January 13, 2013 Letter"), the Escrow Agent sent a letter to Stewart, referencing a default notice of September 4, 2013, and the passage

---

[6] An Act of Correction was filed in the public records of Jefferson Parish (COB 3242, pg. 186, MOB 4397, pg. 164) by the closing notary on January 22, 2009 to correct the property description contained in the Bond for Deed.

[7] Although Stewart testified that the sisters believed that they were purchasing the Property when they executed the Bond for Deed. If indeed that is the case, their belief was not reasonable under the circumstances, as the Bond for Deed states the following:

**IT CLEARLY UNDERSTOOD AND AGREED THAT THIS DOCUMENT IS NOT A SALE, TRANSFER OR CONVEYANCE, BUT ONLY A WRITTEN AGREEMENT TO SELL, TRANSFER AND CONVEY THE HEREIN DESCRIBED PROPERTY IN THE FUTURE; PROVIDED ALL OF THE TERMS, CONDITIONS, PAYMENTS AND OBLIGATIONS SET FORTH HEREIN AFE FULLY, COMPLETELY AND TIMELY MET BY PURCHASERS.**

[8] A schedule of payments allegedly made by Stewart on the Bond for Deed contained in the record, indicates that in January 2013, Stewart began making payments to Walton Hooter, rather than the Escrow Agent. The payment amount increased to $1,250 per month to account for taxes and insurance. Stewart testified that the change in the payee was instigated by Hooter. The Statement of Account prepared by the Escrow Agent and appearing in the record indicates, however, that payments were made to the Escrow Agent through August, 2013.

of more than 45 days since the mailing of the notice. The letter demanded payment within 10 days of all allegedly past due amounts totaling $8,789.46, including monthly payments due for August, 2013 through January, 2014, late fees and a reinstatement fee. The January 13, 2013 Letter did not mention any balloon payment coming due or having come due, nor does it appear from the record that Hooter ever made any effort to enforce the balloon payment provision of the Bond for Deed. The record does not reflect what occurred as a result of the January 13, 2013 Letter. It is clear however that Stewart did not make a balloon payment on or before November 1, 2013. A Statement of Account prepared by the Escrow Agent indicates that Stewart continued to make monthly payments towards the purchase of the Property through June 2022.[9]

On September 7, 2017, Angelnell Stewart died intestate. No administrator of her estate was appointed until March 28, 2023, pursuant to a Petition to Appoint Administrator, when Janet was appointed as administrator.

The Property was damaged by Hurricane Ida, which made landfall in Jefferson Parish on August 29, 2021. The Property was insured by Stewart with State National Fire Insurance Company. Stewart filed a claim against the insurance for damages to the Property, but the insurer promptly became insolvent, leaving Stewart with no funds with which to conduct repairs to the Property.

Stewart testified that sometime in 2022, she began asking Hooter for the deed to the Property. Stewart stated that they had been paying on the Property for many years and she believed that they would have had fully paid for the Property and were entitled to the deed. Thereafter, according to Stewart, Hooter ceased communicating

---

[9] In its Reasons for Judgment, the court below stated that it found "strange" the fact that Hooter "had the title company send out a Notice of Default in 2013 but did not follow up with a cancellation of the bond for deed and instead continued to collect payments pursuant to the Bond for Deed from 2008 through 2022, right before she sold the property to [C&C]" and also that Hooter would "forgo a balloon payment provision and continue to collect monthly installments for another nine (9) years without re-negotiating the terms of the Bond for Deed…."

with them. Because of Hooter's silence, Stewart decided to stop paying the monthly Bond for Deed payments. A schedule submitted on behalf of Stewart shows payments having been made through May 2022.[10]

On November 21, 2022, the Louisiana Insurance Guaranty Association ("LIGA") issued two checks, both payable to Stewart and Hooter, one for $20,125.20 and one for $1,118.25, for a total of $21,243.75. The "insured" and the "claimant" as listed on both checks is Stewart. Stewart testified that she received the checks and had her sister, Dorothy, call Hooter to make arrangements for Hooter to sign the checks. Hooter told Dorothy to have Janet sign the checks and mail them to her, which she did. Hooter never returned the insurance checks to Stewart and never paid Stewart the proceeds of the checks.

On December 7, 2022, Hooter filed a Cancellation of Bond for Deed on Default (the "Cancellation"). On December 19, 2022, Hooter purportedly sold the Property to C&C, which is owned by her friends, the Millers, under the Warranty Deed, for a purchase price of $10,000. The Warranty Deed was filed for recordation in the public records of Jefferson Parish on January 6, 2023 and appears of record at COB 3480, pg. 518.

Prior to the recordation of the Warranty Deed, on January 4, 2023, the Millers, representing themselves as "owners" posted a Notice to Vacate on the Property (the "Notice to Vacate"). On January 6, 2023, the Escrow Agent filed a Request to Cancel Inscription of the Bond for Deed. On January 11, 2023, the Millers filed the Eviction Proceeding. On January 24, 2023, C&C filed the First Rule.

On April 6, 2023, C&C dismissed the First Rule on the grounds that "mover has been provided information that calls into question the efficacy of the cancellation

---

[10] As stated above, the schedule prepared by the Escrow Agent shows that Stewart paid the Bond for Deed through June 2022.

of the Bond for Deed…." On April 10, 2023, Hooter sent a default letter (the "April 2023 Default Letter") to Stewart, which Stewart received on May 3, 2023. In the April 2023 Default Letter, Hooter claimed that Stewart was in default on the Bond for Deed in an amount over $29,000. The April 2023 Default Letter alleges that Stewart stopped making payments on the Bond for Deed in 2021. These allegations were denied by Stewart at trial and C&C did not introduce any evidence demonstrating that Stewart was in default on the Bond for Deed other than the hearsay testimony of Ms. Miller.

As discussed above, C&C filed the Second Rule on June 13, 2023, trial on the Second Rule and Stewart's exceptions occurred on November 7, 2023. The only witnesses to testify at trial were Charlotte Miller, who testified as to the purchase of the Property by C&C and Janet Stewart, who testified as to the execution of the Bond for Deed, payments made on the Bond for Deed and as to the insurance proceeds.

As stated above, the court below denied Stewart's exceptions and C&C's rule for possession by Judgment dated February 27, 2023. C&C appeals herein the portion of the Judgment denying its rule for possession.

## **DISCUSSION**

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La. 1989). If a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housley v. Cerise, 579 So.2d 973 (La. 1991).* A trial court's conclusions of law are reviewed *de novo. Durio v. Horace Mann Ins. Co.,* 11-0084, p. 14 (La. 10/25/11), 74 So.3d 1159, 1168. "The proper standard of appellate review of questions of law is simply whether the court's interpretive decision is legally

correct." *Franklin Southland Printing Co. v. New Orleans Aviation Bd.*, 99-60, p. 8 (La. App. 5 Cir. 7/27/99), 739 So.2d 977, 981.

A bond for deed is "a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." La. R.S. 9:2941. La. R.S. 9:2941.1 provides, in pertinent part:

A. Upon the recordation in the mortgage and conveyance records of a bond for deed contract…any sale, contract, counterletter, lease, or mortgage executed by the bond for deed seller, and any lien, privilege, or judgment relating to or purporting to affect immovable property that has not been filed previously for registry or recorded in the mortgage records shall be subject to the rights created by the bond for deed contract.

B. Following registry of the sale by bond for deed seller to the bond for deed purchaser, his successors or assigns, any such instrument or writing that was filed in the mortgage records after the filing of the bond for deed contract shall be cancelled by the clerk of court or the recorder of mortgages upon request by affidavit of any interested party, but only insofar as it affects the property described in the bond for deed and subsequent sale, after the note holder or lien holder has been given thirty days written notice and fails to execute a release. A copy of the sale by the bond for deed seller to the bond for deed purchaser or his successors or assigns, containing relevant recordation information, shall be attached to the request.

La. R.S. 9:2945 provides that if the buyer under a bond for deed fails to timely make the payments in accordance with the bond for deed contract, the seller may, at her option, and after service by certified mail of a written default notice on the bond for deed purchaser giving the bond for deed purchaser 45 days to cure any default, cancel the bond for deed.

There is no dispute that Hooter and Stewart entered into a Bond for Deed, that the Bond for Deed was filed for recordation and that possession was delivered to Stewart upon execution of the Bond for Deed. The issues relative to whether Stewart defaulted on the Bond for Deed and whether it was properly cancelled are disputed. Stewart claims that she paid the Bond for Deed through May 2022 and claims

ownership of the Property by virtue of having paid well in excess of the purchase price under the Bond for Deed.[11] Conversely, C&C claims ownership of the Property by virtue of the Warranty Deed.

Here, we are called upon to decide whether the court below correctly denied C&C's rule for possession, pursuant to La. C.C.P. art. 4731(A), after service of the Notice to Vacate, with which Stewart refused to comply. An eviction proceeding affords the owner of immovable property a remedy to evict an occupant from the property once the purpose of the occupancy has ceased. La. C.C.P. art. 4702.

In this case, the record shows that the Notice to Vacate was left at the Property on January 4, 2023, by the Millers, who represented themselves to be the "owners" of the Property; however, the Warranty Deed purports to convey the Property from Hooter to C&C, not the Millers. Thus, the Millers are not the owners of the Property and the Notice to Vacate was defective.

Further, at the time the Millers posted the Notice to Vacate on the Property, there had been no valid cancellation of the Bond for Deed by Hooter. Although she filed a cancellation of the Bond for Deed on December 7, 2022, she failed to comply with the mandatory procedures of La. R.S. 9:2945(A), by sending the required notice and giving Stewart an opportunity to cure. See *Williams v. Dixie Land Company,* 231 La. 834, 93 So.2d 185, 186 (La. 1956). Accordingly, the cancellation of the Bond for Deed was ineffective and any sale of the Property to C&C would, at a minimum, be subject to the Bond for Deed under La. R.S. 9:2941.1(A). Moreover, neither the Millers nor C&C is a party to the Bond for Deed and Stewart could not have been in default of any obligation owed to the Millers or to C&C. Thus,

---

[11] In its Reasons for Judgment, the court below stated that, based on the evidence introduced at trial, the court had calculated that Stewart had paid approximately $209,000 on the Bond for Deed, which had a total purchase price of $150,000 and had retained an additional amount of $21,243.75 received from LIGA.

Stewart's right to possession of the Property had not ceased at the time the Millers posted the Notice to Vacate at the Property or at the time the request for cancellation of the inscription of the Bond for Deed was filed on December 7, 2022.

As the court below correctly found, the testimony and evidence introduced at trial by both C&C and Stewart related to a dispute over the ownership of the Property. La. C.C.P. art. 4705 states that the eviction procedure shall not be construed to conflict with the Louisiana Code of Civil Procedure articles relating to actions to determine ownership or possession. It has been held that an eviction proceeding is not a proper proceeding in which to determine disputed title to property, where the defendant has a semblance of title. *Tartan Transport & Const., Ltd. v. McDonald,* 436 So.2d 1270 (La. App. 1st Cir.1983), *writ denied,* 442 So.2d 446 (La.1983). Instead, summary eviction procedure is designed for situations where the possessor has no semblance of claim to title or possession. *Foreman v. Luquette,* 344 So.2d 1111 (La. App. 3d Cir.1977); *Champagne v. Broussard,* 401 So.2d 1060 (La. App. 3rd Cir.), *writ denied,* 409 So.2d 615 (La.1981); *Northeast Realty v. Jackson,* 36,276 pp. 5-6 (La. App. 2 Cir. 8/14/02), 824 So.2d 1264, 1267-68.

We agree with the court below that the issues presented in this case relate to ownership of the Property under the Warranty Deed and the Bond for Deed, and to the right to possession of the Property under the Bond for Deed. Accordingly, the court below correctly denied the Rule for Possession filed by C&C and its decision in this regard is **AFFIRMED.**

## **AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-244

**E-NOTIFIED**
2ND PARISH COURT (CLERK)
HONORABLE SHARLAYNE JACKSON PREVOST (DISTRICT JUDGE)
IRL R. SILVERSTEIN (APPELLANT)        SHERMIN S. KHAN (APPELLEE)

**MAILED**