Plaintiffs, Arthur Duvic, Jr., Manuel, Andres, Carmen Mary, Dorothy Deanne, Herbert F. and Joel L. Duvic are the owners of the real estate No. 1600 Canal Street in the city of New Orleans, having inherited the property from their father, Arthur Duvic, Sr. They brought this suit on April 11, 1945 against the Home Finance Service, a partnership and its members, Leo and Henry L. Heymann and Mrs. Helena Heymann Bressler, under the provisions of Act No. 298 of 1938, commonly known as the "Share Croppers Act", to eject the defendants from the premises No. 1600 Canal Street on the ground that they are occupying and are in possession of the property, other than as tenants or lessees and without any semblance of right or title thereto.
Defendants resist the suit on, two grounds, (1) that they are in legal occupancy of the premises, either as tenants or subtenants and, therefore, the suit cannot be maintained under Act No. 298 of 1938 and (2) that they are entitled to continue in possession for the reason that, on March 22, 1945, plaintiffs entered into a new lease for the use and occupancy of the property with one H. Lee Guedry, who is occupying the premises jointly with defendants, which lease has inured to their benefit and was made for their account.
After a hearing in the District Court on the foregoing issues, there was judgment in favor of the plaintiffs ordering defendants to surrender and vacate the premises immediately and, in event of noncompliance within twenty-four hours, that the Civil Sheriff for the Parish of Orleans forcibly eject them therefrom and deliver to plaintiffs full possession thereof. Defendants have appealed suspensively from the adverse decision.
[1] It will be at once seen from the issues tendered by the pleadings in the case that the principal question presented for decision is whether defendants had a right of legal occupancy to the premises in question at the time the proceedings were instituted — for if it be true, as defendants claim, that they are occupying the property, either as tenants or subtenants, the ejectment action cannot be sustained because the remedy granted by Act No. 298 of 1938 is limited to cases where the occupant sought to be ejected is in illegal possession. See Brown v. Weldon, La. App., 199 So. 620 and Louisiana Delta Farms Co. v. Davis, 202 La. 445, 12 So.2d 213. In cases where the relationship of landlord and tenant has existed or where the ejectment of a subtenant is desired, the owner or lessor, as the case may be, is afforded a full and complete remedy of summary process under the provisions of Revised Statutes, § 2155, as amended by Act No. 200 of 1936, §§ 2156, 2157 and 2158. In other words, Act No. 298 of 1938 grants to owners *Page 792 
of property a summary remedy of ejectment in cases not falling within the provisions of the Revised Statutes, above mentioned, and provides a speedy method for the ouster of illegal possessors, thus relieving landowners of the burdensome expense and delay occasioned by a petitory action, in matters where the possessor has no semblance of claim to title or possession.
An examination of the record reveals the following facts, which are not seriously disputed by the parties. During the year 1934, the property No. 1600 Canal Street was leased by plaintiffs' father to H. Lee Guedry under a verbal contract from month to month. Guedry was engaged in the automobile finance business and conducted his operations at the leased premises. The rental paid by him was $175 per month. Shortly after Guedry acquired the lease of the premises, he entered into a contract with Henry L. Heymann, the father of the present defendants, who was also engaged in the automobile finance business under the name of "Home Finance Service". Under this contract, which is styled "contract of employment", Guedry was employed to operate and conduct, as manager, a branch of the Home Finance Service at No. 1600 Canal Street under the direction and supervision of Heymann. This agreement further provided that Guedry, for his services, was to receive 35% of the net profits of Home Finance Service up to $20,000 and 25% of any profits in excess of that sum and he was given a drawing account of $300 monthly. It was also provided that Guedry would be charged with all losses incurred in the conduct of the business in the same proportion as his earnings, i.e., 35% and 25%.
As soon as this agreement was made, which was over ten years ago, Guedry and Heymann started operations under the name of "Home Finance Service" at the leased premises. The $175 monthly rental was paid by Guedry each month to plaintiffs or to their ancestor and Guedry, in turn, would reimburse himself out of funds belonging to Home Finance Service. The business conducted by Guedry and Heymann, as aforesaid, evidently prospered as their arrangement continued on satisfactorily for over ten years. During this period of time (the date or year is not shown by the record) Heymann died and the defendants, as his heirs, succeeded him. Apparently by verbal agreement, the original contract between Guedry and Heymann under the so-called contract of employment was continued in force between the former and the defendants, as successors to the latter, until the month of March 1945, at which time the arrangement was terminated by Guedry's withdrawal. On March 22, 1945, Guedry and the plaintiffs entered into a written lease for the premises in question which was to commence on April 1, 1945 and end on September 30th in consideration of the same rental of $175 per month. On April 4, 1945, plaintiffs gave defendants written notice, as provided for by Act No. 298 of 1938, to vacate the premises within five calendar days from the date of its delivery. Upon plaintiffs' refusal to comply therewith, this action for ejectment followed.
In determining whether plaintiffs are entitled to the relief sought it is important, at the outset, to ascertain whether defendants were in legal occupancy of the premises either as lessees or sublessees. Plaintiffs' theory of the case is that the contract styled as a "contract of employment" between Guedry and Heymann is, in truth, a contract of partnership; that, since this contract was admittedly terminated in March 1945 by agreement of the parties thereto, defendants' right of occupancy to the premises, either as tenants or subtenants, came to an end and that, thereafter, their possession of the premises has been without warrant in law.
[2] We experience no difficulty whatever in agreeing with counsel for plaintiffs that the contract between Guedry and Heymann, although styled a "contract of employment" is, in law, a partnership. Guedry not only participated in the profits of the venture but he was obligated to bear the losses in the same proportion that he shared in the profits. This partnership between Guedry and Heymann terminated upon the death of Heymann. See Article 2880 of the Civil Code. However, it seems clear that a new partnership was thereafter formed (evidently by verbal agreement between Guedry and the defendants, as heirs of their father), and that it was operated for a considerable length of time as such under the same terms and conditions of the original contract and until it was terminated in March 1945 by Guedry's withdrawal therefrom. Hence, the question arises — What was the status of the partnership's occupancy of the premises in question? Was it a tenant or a subtenant? *Page 793 
[3] We are of the opinion that the partnership was a subtenant. The testimony shows that the property was leased to Guedry and that, he paid the monthly rent. One of the plaintiffs testified that he always looked to Guedry for the payment of the rent and recognized him as the tenant of the building. He, however, admitted that he knew that Home Finance Service was occupying the place and that it conducted its operations there. Since the lease was a verbal lease, there was apparently no prohibition against subletting and, therefore, since Guedry was collecting $175 each month from the partnership, Home Finance Service, of which he was a member, it seems manifest that Home Finance Service was occupying the premises as a tenant of Guedry on a month to month basis.
Being of the foregoing view, the question arises as to the effect of the admitted termination of the partnership in March 1945. If the partnership had not been terminated, it is clear that its sublease from Guedry, being for an indeterminate period and by the month, would have reconducted by operation of law at the end of each month and could only be terminated (except for breach or by mutual consent) by Guedry giving written notice to Home Finance Service at least ten days before the expiration of the month which had begun to run. Article2685 of the Civil Code provides: "If the renting of a house or other edifice, or an apartment, has been made without fixing its duration, the lease shall be considered to have been made by the month."
Article 2686 states: "The parties must abide by the agreement as fixed at the time of the lease. If no time for its duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run."
And Article 2689 declares: "If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued, and he cannot be compelled to deliver up the house or room without having received the legal notice or warning directed by article 2686."
Thus, it is evident that, if the termination of the partnership in March 1945 did not effect an immediate cancellation, the sublease from Guedry to Home Finance Service reconducted on the first of April, 1945, as no notice was served ten days prior to that date, by either the plaintiffs or Guedry, signifying the intention of the lessor to terminate the lease. Of course, the sublease could have been terminated in another way — that is, by Guedry's loss (as principal tenant) of his legal occupancy of the premises. But Guedry's possession of the premises has remained intact because the plaintiffs granted to him a new lease beginning April 1, 1945 for a period of six months at the same rental which he paid under the verbal lease. What, then, were the legal effects resulting from the termination of the partnership, in so far as the sublease was concerned? Did it prevent a reconduction of the sublease on April 1, 1945?
Section 4 of Chapter 2 of Title IX of the Civil Code, under the heading "Leases", sets forth the causes which effect a dissolution of a lease. By. Article 2731, it is provided that the contract of lease is not dissolved by the death of either the lessor or the lessee and that their respective heirs are bound by the contract. There is no Article which we have been able to discover, providing that a lease made with a partnership is dissolved when the partnership terminates or ceases, to continue its operations as a going concern. And it would seem to follow that, if a lease is not dissolved by the death of one of the parties thereto, the mere termination of a partnership does not, ipso facto, have the effect of canceling or dissolving the lease to which the partnership is a party. However, in order to determine whether the termination of the partnership has the effect contended for by the plaintiffs, it is important to examine the Articles of the Civil Code dealing with the dissolution of partnerships. None of the Articles (2876 thru 2890) indicate that the mere termination Of the partnership agreement produces immediately the extinguishment of the firm's status as a legal entity. On the contrary, Article 2890, which provides for the partition of assets of a dissolved partnership in accordance with the rules concerning the partition of successions, plainly contemplates an orderly liquidation of the firm's affairs. In the instant case, Guedry admits in his testimony that, after the voluntary termination of the partnership contract, there were many outstanding accounts and other assets of *Page 794 
the firm in which he still has, an interest. Therefore, it follows that the firm remained "in, esse" for purposes of liquidation.
In Montague v. Weil Bro., 30 La. Ann. 50, the Court said: "It is also true that a commercial partnership exists for the purpose of its liquidation, after it has been dissolved, and the former partners may be sued in the Court of the firm domicil on the liabilities of the firm, and in a late case this doctrine was extended so as to permit them to be brought in by attachment, if they were non-residents. Lobdell v. Bushnell, 24 La. Ann. 295."
In that matter, it appeared that the defendant partnership had been occupying a store belonging to the plaintiffs under a lease, which was to expire on October 31, 1873. The rental under this lease was $100 per month. In August 1873, two months previous to the expiration of the lease, the defendant agreed to enter into a new lease for the store, commencing November 1, 1873, for a monthly rental of $75. This agreement was verbal and, under it, the defendant promised to whitewash the store and that it would sign a written lease and rent notes. Although plaintiff's agent attempted to have the new lease signed on many occasions, the defendant and its members failed to do so and, on December 15, 1873, plaintiff's agent received a written notice from Samuel Well, successor to the partnership of Weil Bro., that the premises would be vacated. It further appeared that, on October 25, 1873, six days before the new lease was to begin, the partnership of Weil Bro. was dissolved and notice thereof was published in a newspaper on October 31st. Plaintiffs thereafter brought suit to recover the rent on the new lease and provisionally seized the contents of the store. One of the defenses made by the former partners of Weil Bro., who were joined as parties to the suit, was that the termination of the partnership had the effect of canceling any liability for its agreement as it no longer remained as a separate entity. The court, however, decided to the contrary and disposed of this contention in the manner quoted above.
An examination of the subsequent jurisprudence on the subject reveals that the doctrine of the Montague case has never been altered and that authority has been many times cited with approval.
[4] Thus, we see that the mere termination of a partnership does not have the effect, ipso facto, of extinguishing the concern as a legal entity. It remains as such for the 'purpose of liquidation and until its affairs are completely wound up. This is as it should be, for it is obvious that a concern, such as Home Finance Service, has many assets and liabilities. The discontinuance of the enterprise necessitates the settling of its affairs. The sublease which the partnership held from Guedry might have been very valuable and its right of occupancy to the place where its business was conducted is plainly an asset of the partnership. It is true that this sublease was for an indeterminate period, or by the month, and that it could have been terminated, either in the manner pointed out by Article 2686 of the Civil Code or by Guedry's loss of occupancy as principal lessee. However, the sublease has never been canceled by the giving of the required notice within ten days before the expiration of the month and, therefore, the mere termination of the partnership enterprise did not prevent a tacit reconduction of the sublease.
[5] Since the sublease to Home Finance Service had reconducted, the defendants were in lawful possession of the premises on April 4th, when the notice to vacate was given by the plaintiffs. As a consequence, plaintiffs are not entitled to the relief sought under Act No. 298 of 1938 as defendants' possession was not "other than as a tenant or lessee and without any semblance of right or title to said occupancy or possession" as alleged in the petition.
It has been suggested that, even though plaintiffs were unable to succeed in ejecting defendants under Act No. 298 of 1938, they are nevertheless entitled to maintain their action under the first paragraph of Section 2155 of the Revised Statutes, as amended by Act No. 200 of 1936. There are many answers to this proposition. In the first place, it is to be noticed that plaintiffs have disavowed any intention of proceeding under Section 2155 as that section provides the remedy for ejectment only in cases where the relation of landlord and tenant exists or has existed. Moreover, the theory upon which the first paragraph of Section 2155 is said to cover plaintiffs' case appears to be unsound. That paragraph provides: "When any person having leased any house, store or other building, or landed estate, for a term of one or more years, or by the month or otherwise, either verbally or otherwise, shall be desirous of obtaining possession of the said leased premises *Page 795 
upon the termination of the lease, either by limitation or by nonpayment of the rent when due, or any other breach of the said lease, he shall demand and require in writing his tenant to remove from and leave the same, allowing him five calendar days from the day such notice is delivered."
[6] It is said that, since the sublease to defendants from Guedry was by the month, it either expired by limitation at the end of March or by the termination of the partnership in March 1945 and that, therefore, a five day notice under the above-quoted paragraph was all that was required. The error we find in this suggestion is that the sublease was not for the month of March or any other month and it did not terminate at the end of any month. On the contrary, the lease was from month to month for an indeterminate period. Hence, under Article 2686
of the Civil Code it continued from month to month in the absence of the delivery of a notice by the lessor, at least ten days before the expiration of any month, that it was his desire to discontinue the lease. The above-quoted paragraph of Section 2155, Rev.St., relied upon has application only in cases where there has been a breach of the lease, by the nonpayment of rent or otherwise, or in cases where the building is leased for a definite term, such as for a year or for a particular month. If the lease is for an indeterminate period, as in the instant suit, the provisions of Article 2686 of the Civil Code and the second paragraph of Section 2155, Rev.St., are applicable. The second paragraph of the Section declares: "If the owner or his agent shall be desirous of obtaining the possession of the said leased premises for any other reason or cause, such as, for the purpose of leasing the said premises to another tenant or otherwise, he shall give to the tenant a notice in writing to vacate, ten days before the expiration of the month, if the same be a monthly lease, * * *."
Being of the opinion hereinabove expressed, we find it unnecessary to consider or discuss defendants' other contention that the new lease, made by plaintiffs to Guedry, was for their account and benefit.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiffs' suit be dismissed at their cost.
Reversed.