977 So.2d 62 (2007)
Lisa C. MATTHEWS, as Provisional Administratrix of the Succession of Edward A. Horrell, Sr.
v.
Walter and Edna HORRELL.
No. 2006 CA 1973.
Court of Appeal of Louisiana, First Circuit.
November 7, 2007.
*64 Lisa C. Matthews, Kathleen D. Lambert, New Orleans, LA, for Plaintiff/Appellee Lisa C. Matthews, as Provisional Administratrix of the Succession of Edward A. Horrell.
Walter and Edna Horrell, Covington, LA, for Defendants/Appellants Walter and Edna Horrell pro se.
Before PETTIGREW, DOWNING, and HUGHES, JJ.
HUGHES, J.
This is an appeal from an eviction ordered by the trial court, which was brought by a succession administratrix against an heir in possession of immovable property of the succession. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
The facts and procedural history surrounding the succession of Edward A. Horrell, Sr. began as stated in Succession of Horrell, 95-1598, pp. 1-4 (La.App. 4 Cir. 9/11/96), 680 So.2d 725, 725-27, writ denied, 96-2841 (La.1/31/97), 687 So.2d 403:
Edward A. Horrell, Sr. died July 9, 1993, at age 84, leaving his wife of more than fifty years, Clare Younger Horrell (Mrs. Horrell), and five adult children, Walter (born in 1939), GayeFN1 (born 1940), Michael (born 1942), Edward, Jr. (born in 1946), and Marie Elise a/k/a "Liz" (born in 1948). Shortly after his death, Mrs. Horrell filed a petition and order for appointment of administratrix with a sworn descriptive list, stating that Mr. Horrell died intestate.
FN1. Throughout the record Ms. Horrell's name is inconsistently spelled as Gay, Gaye, and Gayle.
The detailed descriptive list indicates that at the time of his death Mr. Horrell *65 owned the following separate immoveable property: The family home at 505 Florida Avenue (valued at $125,000) and industrial property at 2020 Lafayette Street (valued at $150,000), both in New Orleans, as well as an entire city blockFN2 located at 19th and Tyler Streets in downtown Covington (valued at $300,000).
FN2. The record indicates that at least two houses were located on the property and there is some indication that it was subdivided into 10 lots.
Mr. Horrell owned, as community property with his wife, a camp located in Lake Catherine, Louisiana (valued at $50,000), and the industrial property at 4821 Earhart Boulevard in New Orleans where his company (Horrell and Company, Inc.) business office and warehouse were located (valued at $200,000). In addition, Mr. and Mrs. Horrell owned as joint tenants with a right of survivorship a house in Bay St. Louis, Mississippi (valued at $125,000) and two lots in Diamondhead, Mississippi (valued at $24,000).
Several days prior to the filing of Mrs. Horrell's petition and descriptive list, however, the Horrell's oldest son, Walter, sought to have his father's statutory will (executed on April 13, 1993) probated. It provided the following:
I, Edward A. Horrell, make this my last will and testament. I hereby revoke any prior wills or codicils that I may have made.
I give, grant, donate and bequeath the usufruct of all shares that I own in companies listed on the New York Stock Exchange and the usufruct of my home located at 505 Florida Boulevard, New Orleans, Louisiana, to my spouse, Clare Younger Horrell, for the rest of her life.
Subject to the usufruct of the premises at 505 Florida Boulevard, New Orleans, Louisiana, granted to my spouse, I give, grant, donate and bequeath all the immovable property (real estate) that I own in the Parish of Orleans, State of Louisiana, to four of my five children, namely Marie Elise Horrell, wife of Paul LeCour, Edward A. Horrell, Jr., Michael J. Horrell, and Gay Ann Horrell, divorced wife of John B. Coffer.
I give, grant, and bequeath all the immovable property (real estate) that I own in the Parish of St. Tammany, State of Louisiana, to my fifth child, Walter J. Horrell.
I give, grant, donate, and bequeath all the remainder of my property to my five children, Walter J. Horrell, Gay Ann Horrell, divorced wife of John B. Coffer, Michael J. Horrell, Edward A. Horrell, Jr., and Marie Elise Horrell, wife of Paul LeCour. I make them my universal legatees.
I name and appoint Walter J. Horrell as executor of my succession with full seizin and without bond or security.
The will, which had been prepared by Walter's daughter, Mary F. Horrell, a notary public, was signed in Mr. Horrell's hospital room at Mercy Hospital and witnessed by Edna a/k/a "Betty" Horrell (Walter's wife) and Allen E. Horrell (Walter's son) with Walter present. On the same day that Mr. Horrell signed the will, he also signed an Act of Donation prepared by Walter (who was an attorney) giving Walter the property in Covington.FN3
FN3. Six weeks later, after discovery of this Act of Donation filed in the St. Tammany public records, Mr. Horrell signed a Revocation of Donation prepared by an attorney hired by Mr. Horrell's other children.
On July 23, 1993, Mrs. Horrell was appointed administratrix. On August 31, 1993, she and four of her children (Gaye, Michael, Edward, and Marie Elise) *66 petitioned to have the will declared invalid, alleging lack of testamentary capacity, undue influence, lack of sufficient number of witnesses, and conflict of interest. The two proceedings (the intestate succession filed by Mrs. Horrell and the testate succession filed by Walter) were consolidated on December 22, 1993.
On Jan. 10, 1994, Walter sought to remove his mother as administratrix and to have all the succession property delivered to him as executor. He alleged that his mother (1) failed to include two vehicles (a 1980 truck and a car) in the descriptive list; (2) used only rough estimates in valuing the succession property; (3) commingled funds and continued to write checks for her own purposes; (4) paid succession debts without authorization of the court; (5) had taken steps to continue the business without complying with codal requirements and failed to operate it for the benefit of the succession. The trial court granted Walter's motion, removing Mrs. Horrell as administratrix and ordering her to deliver all succession property to Walter.
On March 23, 1994, an accountant completed a list of deposits and disbursements in the Horrells' four bank accounts. In April, Walter filed a rule for contempt because his mother had failed to deliver the succession property to him. On April 7th, Mrs. Horrell petitioned for an interim allowance because Walter was receiving the stock dividends which Mr. Horrell had transferred to her prior to his death giving her an annual income of approximately $21,140 in monthly payments of $700 and quarterly payments of $3000. Walter opposed the petition, arguing that his mother received social security payments of $750 per month and that the house in Mississippi (where his sister Gaye lived) "should be producing income in the approximate amount of $600 per month."FN4
FN4. Nothing in the record indicates that Walter, who has lived rent-free on the Covington property his entire life and whose son likewise lives rent-free in a separate house on the property, began paying rent to the succession.
On Sept. 28, 29, and October 3, 1994, a hearing was held on the petition to nullify the will and the rule to remove Walter as executor. On November 17, 1994, the trial court denied both, stating that Walter's siblings failed to prove by clear and convincing evidence that Mr. Horrell lacked testamentary capacity when he executed the April 13th testament. The trial judge found that the testimony of Walter, his wife, and children as to what occurred on the evening of April 13 was consistent in all material respects and "made it clear that Mr. Horrell had total control and use of his faculties, that he was aware of his surroundings and that he knew exactly what he was doing." The trial judge dismissed the testimony of Dr. Harvey Rifkin, stating that his psychiatric examination of Mr. Horrell shortly after the will was executed was based on inadequate facts and contradicted by the testimony of Dr. Robert Jeanfreau, Mr. Horrell's treating physician.
In the succession proceeding, the other heirs of Mr. Horrell appealed the trial court judgment upholding the testamentary dispositions and contended on appeal that Mr. Horrell lacked capacity to execute the will or that the will was a product of fraud and/or undue influence exerted by Walter and his daughter Mary. The Fourth Circuit reversed the trial court judgment denying the petition to nullify the will, finding manifest error, and ruling that objective evidence, as well as the medical testimony, made it clear that Mr. Horrell *67 lacked the requisite understanding of the nature of the testamentary act and its effects (issues of undue influence and fraud were not reached). Accordingly, the judgment of the trial court was reversed, the Petition for Declaration of Invalidity of Alleged Testament and the Motion to Remove Executor were granted, and the matter was remanded for further proceedings. Succession of Horrell, 95-1598 at pp. 8-9, 680 So.2d at 729.
On remand to the Civil District Court for the Parish of Orleans, Walter J. Horrell's petition to be appointed administrator of his father's succession was denied, and Hibernia National Bank was appointed as administrator, conditioned upon the acceptance of the appointment;[1] another appeal was made to the Fourth Circuit on these rulings. In its review, the Fourth Circuit noted the oral reasons of the trial court for judgment:
If I was just looking at this case in a vacuum, it may be easy to say that Walter, of all the heirs is more qualified because of his experience as an attorney and his stability, as oppose[d] to Michael, whose employment record has not been as stable and I personally have viewed some of his outburst[s] of temper in this courtroom, but I can't look at this case in a vacuum. I look at this case as the Court of Appeal has decided that a son got his father, who lack[ed] the requisite mental capacity to sign a will. Now, they did not-you're right, they didn't talk about fraud, and perhaps if Walter, you were a third party and were disinterested in getting what was in the will decided, one would say, well it really doesn't matter. If a lawyer went and just got someone to sign a will, they may not be capable of telling whether someone lacked the mental capacity, but as the child of that person, and certainly, I can tell when my parents are functioning at a high level, middle level, low level, you know the person well. And I don't think in good conscious, [sic] because of that, and because of the extraordinary animosity that exist[s] in this case, I can appoint you as the administrator.
Succession of Horrell, 97-2115, pp. 2-3 (La.App. 4 Cir. 3/25/98), 709 So.2d 1069, 1070, writ denied, 98-1023 (La.5/29/98), 720 So.2d 669.
In that appeal, Walter Horrell contended that he was qualified to serve as administrator of this succession. In support of his position, Walter pointed to the fact that he was a practicing attorney, that he had served as executor of the succession for three years, and that he had performed his duties in a professional and timely manner. Walter also contended that the evidence presented indicated that he voted regularly, was not in debt, had never been contacted by a bill collector, had never had a lien of any type filed against him, had been happily married to the same woman for thirty-eight years, had raised three children, had been employed as an attorney by the State of Louisiana for more than thirty-one years with an unblemished record, had never been arrested or convicted of a crime, and had operated a motor vehicle in excess of forty-two years without ever having received a traffic ticket. Walter asserted that he did not have the profile of a person of bad moral character, *68 despite the trial court's rejection of this claim at trial. Walter Horrell argued to the Fourth Circuit that the trial court therefore had no basis for disqualifying him. Succession of Horrell, 97-2115 at pp. 3-4, 709 So.2d at 1071.
In upholding the trial court's rulings, the Fourth Circuit reasoned:
In the present case, the trial court found that there was an extraordinary amount of animosity between the family members in this case. Further, in refusing to qualify Walter Horrell as administrator, the court noted [Walter Horrell's] role in having his deceased father execute a will which was later determined by this court to be confected without testamentary capacity. The trial court apparently made a factual finding that Walter was aware that his father may have lacked testamentary capacity prior to executing the will, but nevertheless submitted the document to him. In reaching this conclusion, the trial court relied on the previous decision of this Court which invalidated the will.
"Bad moral character" does not only include the traditional types of behavior or previous bad acts which would indicate that one is not fit to assume the responsibilities of administrator of a succession. In the present case, the trial court found that Walter's involvement in the execution of his father's will which was subsequently found to be invalid due to lack of testamentary behavior constituted bad moral character sufficient to disqualify him from serving as administrator of his father's succession. Although there were no allegations or proof of fraud in the case, Walter benefited from the provisions of the will in that he would have inherited to the exclusion of the remaining heirs a substantial piece of real estate in St. Tammany Parish. There is also evidence that the decedent executed an Act of Donation of this immovable property in favor of Walter which is being contested and the litigation must be pursued by the succession's administrator.
Even assuming Walter's character is pristine in all respects other than his involvement in the execution of his father's will and the act of donation, we find that the circumstances here, in addition to the animosity among the family members which was noted by the trial court, were sufficient to support a finding that Walter could not serve as administrator. After carefully reviewing the allegations made in this case and the evidence presented at the contradictory hearing, we cannot say that the trial court abused its discretion in refusing to appoint Walter Horrell as administrator of this succession on the basis of LSA-C.C.P. art. 3097.
Succession of Horrell, 97-2115 at pp. 4-5, 709 So.2d at 1071.
The validity of the Act of Donation was litigated in the district court in St. Tammany Parish, which granted summary judgment in favor of Walter Horrell's co-heirs invalidating the donation and declaring the issue of Edward A. Horrell, Sr.'s mental status res judicata, citing the Fourth Circuit's prior judgment. On appeal of that matter to this court, the following additional facts were stated:
On April 13, 1993, Mr. Horrell made an inter vivos donation of his separate property located in Covington, Louisiana to his son, Walter J. Horrell, Sr. The donation was valid in form, by authentic act and recorded in the conveyance records in St. Tammany Parish. That same day, Mr. Horrell executed a testament which also gave the Covington property to Walter. Walter presented both of these documents to Mr. Horrell, *69 who was eighty-four years old, while Mr. Horrell was hospitalized in Mercy Hospital in New Orleans, Louisiana.
When Mrs. Clare Horrell, Mr. Horrell's wife, and their adult children learned of the donation, they presented Mr. Horrell with a "Revocation of Donation" which he executed on May 21, 1993. That document purported to annul the donation to Walter for "acts of ingratitude, cruel treatment and grievous injury." Mr. Horrell also executed a document granting Mrs. Horrell power of attorney over his affairs.
When Walter learned of the acts of his mother and siblings, he procured Mr. Horrell's signature on a document revoking the power of attorney in favor of Mrs. Horrell and on an incomplete petition to dismiss any suit Mrs. Horrell may file to revoke the donation.
On July 7, 1993, Mrs. Horrell petitioned the district court in St. Tammany Parish to revoke the inter vivos donation of the Covington property. The petition named Mr. Edward Horrell and Mrs. Horrell as his agent as Plaintiffs. Mr. Horrell died on July 9, 1993. On August 26, 1993, Walter filed a peremptory exception of no right of action asserting that Mrs. Horrell could not bring the action for these reasons: (1) Mr. Horrell had revoked the power of attorney; (2) Mr. Horrell's death terminated the mandate as a matter of law; and, (3) Mrs. Horrell had no interest in the Covington property since it was the separate property of her deceased husband.
On August 31, 1993, Mrs. Horrell amended the petition to appear as Administratrix of the Succession of Edward A. Horrell, Sr., asserting that Mr. Horrell had lacked the mental capacity to execute the Act of Donation on April 13, 1993 and that he had executed a revocation of the donation on May 21, 1993.
Walter responded by filing exceptions of vagueness and no right of action contending that since Mr. Horrell had died testate and had appointed a testamentary executor who was not Mrs. Horrell, then Mrs. Horrell was not the legitimate succession representative.
Mrs. Horrell responded on April 15, 1997 by petitioning the court to amend her petition to substitute her other children, Gaye Horrell Coffer, Michael Horrell, Edward Horrell, Jr., and Marie LeCour as Plaintiffs (referred to collectively as "Plaintiffs"). These Plaintiffs declared that they were substituted as Plaintiffs in order to "represent and protect their own interests" in the Covington property. Walter then filed a motion entitled "Exceptions" on June 10, 1997. Therein he alleged insufficiency of service of process, vagueness, lack of capacity and "all other declinatory and dilatory exceptions." The trial court denied all of these exceptions on September 26, 1997.
Walter sought to probate the will in the Succession of Horrell in Orleans Parish. Mrs. Horrell and the Plaintiffs petitioned that court to annul the will on the ground that Mr. Horrell had lacked the mental capacity to execute a testament. That suit proceeded simultaneously with the instant suit.
On January 14, 1998, the trial court heard the exceptions of vagueness and no right of action regarding the First Supplemental Petition in which Mrs. Horrell appeared as administratrix of the Succession of Horrell. Without explaining its reasons, the trial court denied the exceptions.
On January 16, 1998, Walter filed a peremptory exception of no cause of action, challenging the Plaintiffs' claim that the donation was made under duress. The Plaintiffs filed a motion to *70 strike the exception which the trial court granted. The trial court then ordered Walter to answer the petition.
Walter filed his answer on February 29, 1998. Immediately thereafter, the Plaintiffs moved for summary judgment based on res judicata. Their argument was that the Fourth Circuit Court of Appeal had found Mr. Horrell lacked the mental capacity to execute a testament on April 13, 1993, and therefore, Mr. Horrell also kicked the capacity to make an inter vivos donation that day. The trial court granted summary judgment.
Horrell v. Horrell, 99-1093, pp. 2-4 (La. App. 1 Cir. 10/6/00), 808 So.2d 363, 366-67, on rehearing, 99-1093 (La.App. 1 Cir. 8/15/01), 808 So.2d 372, writ denied, 2001-2546 (La.12/7/01), 803 So.2d 971 (footnote omitted).
Noting that Lisa Matthews was appointed as provisional administratrix for the succession on July 3, 1997 in Orleans Parish, this court concluded that neither Mrs. Horrell, nor the co-heirs of the estate, were proper party plaintiffs to assert a right of the succession while the succession was under administration. Horrell v. Horrell, 99-1093 at pp. 7 and 11, 808 So.2d at 369 and 371. In so holding, this court further reasoned:
That leaves Mrs. Horrell in her individual capacity as surviving spouse of Mr. Horrell. Following the Fourth Circuit's judgment annulling Mr. Horrell's testament due to his lack of mental capacity, Mr. Horrell's estate must devolve according to the laws of intestacy. The Covington property which was the object of the donation inter vivos was Mr. Horrell's separate property. Mr. Horrell's descendants succeeded to his separate property under the laws of intestacy. La.Civ.Code arts. 880 and 888. Mrs. Horrell, as his surviving spouse, would only have an interest in this property if Mr. Horrell had left neither descendants, nor parents, siblings or descendants from them. La.Civ.Code art. 894.
Horrell v. Horrell, 99-1093 at p. 7, 808 So.2d at 369. The trial court ruling in favor of plaintiffs was therefore reversed and the case remanded to the lower court for substitution of the proper party plaintiff. On motion of the heirs to substitute Ms. Matthews as plaintiff and for rehearing, this court granted the motion, allowed substitution of Ms. Matthews as plaintiff, and affirmed the trial court's summary judgment invalidating the donation inter vivos based on res judicata. Horrell v. Horrell, 99-1093 at p. 8, 808 So.2d at 376 (on rehearing).
The Fourth Circuit subsequently had the opportunity to review this case again in an unpublished decision rendered in In re Succession of Horrell, XXXX-XXXX (La. App. 4 Cir. 11/12/03), 859 So.2d 318 (table), writ denied, XXXX-XXXX (La.4/8/04), 870 So.2d 273, which affirmed certain district court rulings regarding an amended detailed descriptive list filed into the Orleans Parish succession.
Against this factual and procedural backdrop, the instant proceeding arose. On January 19, 2006, the provisional administratrix of this succession, Lisa C. Matthews, filed a "Rule to Evict Occupants" in the district court in St. Tammany Parish, alleging defendants Walter and Edna Horrell were occupying premises "owned" by the succession, located at 711 W. 19th Street in Covington, Louisiana. Ms. Matthews further alleged that despite a notice to vacate these premise, the defendants failed to do so.
In response, Walter and Edna Horrell filed a pleading entitled, "Exceptions and Verified Answer," in which they alleged that they were "legal possessors" of the immovable property at issue, asserting *71 that Walter Horrell had an ownership interest in the property, and as such were not "occupants" as defined by LSA-C.C.P. art. 4704. In addition, Walter and Edna Horrell alleged mismanagement of the estate by Ms. Matthews, and asserted that despite the estate being "manifestly solvent," the administration of the succession had been prolonged by Ms. Matthews for over eight and one-half years "to `churn' the succession in order to generate fees, for herself, her law partners and their friends." Walter and Edna Horrell further alleged that Ms. Matthews had instituted the eviction proceeding as "retaliation" in response to their contention that an inventory directed against them was "punitive, untimely and illegal." The Horrells asserted that their possessory interest in the property involved a "real right" that could only be resolved through an ordinary proceeding and not a summary or special proceeding such as the action for eviction. Further, and alternatively, the Horrells contended that they had paid certain necessary expenses as defined by LSA-C.C. arts. 527-529 to maintain the immovable property over the years, which were required to be repaid prior to Ms. Matthew's obtaining possession of the property. The Horrells also alleged that they had possessed the property for many years "with the intention to possess as owners," that they had no contractual relationship with Ms. Matthews, that there was no valid reason for the eviction, that the notice to vacate was "old, stale and invalid," that the action was premature, and that the rule to evict was too vague.[2]
Following a June 13, 2006 hearing, the trial judge ruled in favor of eviction, giving oral reasons as follows:
The Court finds that, under the provisions of [LSA-C.C.P. art. 4732], that good cause exists for the eviction rule to proceed in connection with this matter; the Court making the specific finding that based upon the testimony of the succession representative, which the Court accepts in that respect, that the failure of Mr. [Walter] Horrell to cooperate in the appraisal and inventory of the [movable] property on the succession property, together with the extremely protractive nature of this litigation, warrants the eviction.
A judgment of eviction was signed on June 13, 2006.
From this judgment, Walter and Edna Horrell suspensively appealed,[3] and urge the following assignments of error:
1. The trial court erred in ordering the eviction of the appellants.
2. The trial court erred in failing to recognize that plaintiff Matthews had judicially confessed the possession of the appellants.
3. The trial court erred in failing to recognize that the appellants, if legally subject to eviction which is denied, *72 would have a legal right to retain possession of the property until reimbursed for the necessary and useful expenses they paid.
4. The trial court erred in failing to sustain the exception of no cause of action as well as the other exceptions.
5. The trial court erred in excluding evidence that the appellants had paid the necessary and useful expenses on the property for many years as well as evidence to establish the reprisal.
6. The trial court erred in taking it upon itself to consider documents or other matters outside the evidence received at the hearing.
7. The trial court erred in not signing a proper judgment.

LAW AND ANALYSIS
Louisiana's statutory scheme for eviction (LSA-C.C.P. art. 4701, et seq.) was designed to give landowners the right to oust occupants without the burdensome expense and delay required by a petitory action. Eviction by summary procedure is available for the eviction of an "occupant" after the purpose of the occupancy has ceased. Citizens Bank & Trust Co. v. Carr, 583 So.2d 864, 866 (La.App. 1 Cir.), writ denied, 588 So.2d 109 (La.1991) (citing LSA-C.C.P. art. 4702, LSA-C.C.P. art. 4704,[4] and Skannal v. Jones, 384 So.2d 494 (La.App. 2 Cir.1980)).
Thus, two elements must be established by a plaintiff to prevail in an action for eviction: (1) the defendant's status as an occupant, and (2) the cessation of the purpose of the occupancy. See e.g. Crabtree v. Bordelon, 31 So.2d 890, 891 (La. App. 2 Cir.1947).
In the instant case, Ms. Matthews asserts that Walter and Edna Horrell were occupants of the property as they had her permission to remain in possession of the property, and that since she withdrew her permission and demanded that they vacate the premises, the purpose of their occupancy had ceased.[5]
Notwithstanding this contention, the Horrells began residing on the property long before Ms. Matthews became connected with the matter through her July 3, 1997 appointment as provisional administratrix. Walter Horrell testified before the trial court that he had lived on the property for fifty-one years, and that it had belonged to his father, Edward A. Horrell, Sr., prior to his 1993 death. Presumably, Walter Horrell resided on the premises prior to 1993 with his father's permission; however, after Mr. Horrell's death, Walter Horrell testified that he occupied the property in his own right, claiming an ownership interest.
It is not disputed that in this case the property at issue was the separate property of Edward A. Horrell, Sr. The facts and procedural history set forth hereinabove reveal that it is the law of this case that the late Mr. Horrell's succession is intestate, and that Walter Horrell is one of his father's five adult children, who are the heirs to that property. Therefore, in accordance with LSA-C.C. arts. 880 and *73 888,[6] Walter Horrell does in fact have an ownership interest in the property at issue unless and until it is disposed of during the administration of the succession or thereafter.[7] No evidence was introduced before the lower court that this property has as yet been alienated. Consequently, we conclude that Ms. Matthews failed to show that the purpose Walter Horrell had in occupying the premises, i.e. to exercise his ownership rights, has ceased.
We note that Ms. Matthew's expressed reason for the eviction was that it was time for Walter Horrell "to move on" because his occupancy of the property was "bad for the succession." Ms. Matthews explained her conclusion to the trial court by stating that Walter Horrell had refused to comply with her requests to inventory some items of movable property belonging to the estate of the late Mr. Horrell, which were alleged to be located on the property occupied by Walter Horrell. The record further reflects that the Orleans Parish district court ordered Ms. Matthews to "establish the July 9, 1993 value of the household furnishings situated in Covington, Louisiana that were inherited by Mr. Horrell and which were owned by Mr. Horrell at the time of his death including, but not limited to, a cabinet, a sofa, and 4 chairs." In response to Walter Horrell's pro se cross-examination during the trial below as to her motivation in filing the eviction, Ms. Matthews stated, "This came about because you have gone out of your way to prevent me from following a court order [to inventory estate property], and I'm trying to do my job as administratrix of this estate." Ms. Matthews further stated, "I think it's quite clear that the succession of Edward Horrell, Sr., owns that property, or I wouldn't be here today." Ms. Matthews testified that because she did not know what movables in Walter and Edna Horrell's possession belonged to the late Mr. Horrell, she intended to inventory and appraise all movables on the premises they occupied (allegedly under the direction of the Orleans Parish district court judge[8]) so that if the other co-heirs "wanted to say that some of that property fell into the succession, then we would have a value for that property." In a copy of letter directed in October of 2004 by Ms. Matthews to Walter Horrell, even though she identified specific items of furniture as belonging to the estate of the late Mr. Horrell, Ms. Matthews stated that she was instructing the appraiser to inspect and appraise "all of the moveables [sic] located on the Covington property." (Emphasis original.)
*74 We believe Ms. Matthews was mistaken in her assertion that "the succession" "owned" the property at issue. A "succession" is "the transmission of the estate of the deceased to his successors." LSA-C.C. art. 871. The Comments to Article 871 state:
This provision combines two of the meanings of "succession" in the Civil Code of 1870. It is intended to establish that the word "succession" means the process by which heirs and legatees succeed to the properly of the deceased. Since the property is transmitted immediately upon death to the proper successors, it follows that they have a right to possession after complying with appropriate procedural requisites. This revision, together with the next article, is intended to eliminate the meaning of "succession" which describes the "estate" of the deceased as if it were a separate legal entity. [Emphasis added.]
The "estate" of a deceased means "the property, rights, and obligations that a person leaves after his death, whether the property exceeds the charges or the charges exceed the property, or whether he has only left charges without any property" and "includes not only the rights and obligations of the deceased as they exist at the time of death, but all that has accrued thereto since death, and the new charges to which it becomes subject." LSA-C.C. art. 872.
Succession occurs at the death of a person. LSA-C.C. art. 934. Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them. LSA-C.C. art. 935. The possession of the decedent is transferred to his successors, whether testate or intestate, and if testate, whether particular, general, or universal legatees. A universal successor continues the possession of the decedent with all its advantages and defects, and with no alteration in the nature of the possession.[9] LSA-C.C. art. 936. When a person, at his decease, leaves several heirs, each of them becomes an undivided proprietor of the effects of the succession, for the part or portion coming to him, which forms among the heirs a community of property, as long as it remains undivided. LSA-C.C. art. 1292.
Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole. If a successor exercises his rights of ownership after the qualification of a succession representative, the effect of that exercise is subordinate to the administration of the estate. LSA-C.C. art. 938. Further, a *75 succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor. LSA-C.C.P. art. 3211. Article 3211 contains no provision as to the time when the representative should take possession; this point is covered by the "prudent administrator" concept, and thus he should be required to take possession as soon as practicable. LSA-C.C.P. art. 3211, Comment (d). No provision regarding the method of collecting succession property is necessary; this is likewise covered by the "prudent administrator" concept. LSA-C.C.P. art. 3211, Comment (e).
Another consideration is presented by LSA-C.C.P. art. 3191, which provides, in part, that a succession representative is "a fiduciary with respect to the succession" and "shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law."[10] (Emphasis added.) Further, the succession representative "shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act." LSA-C.C.P. art. 3191. Since "the succession" is "the transmission of the estate of the deceased to his successors," as defined in LSA-C.C. art. 871, then, logically, it follows that part of the succession representative's fiduciary duty is to transmit property contained in the deceased's estate to his heirs. (Emphasis added.)
In the instant case, the succession representative, Ms. Matthews, seeks to do the opposite; i.e., to divest succession property from the decedent's heir who has a one-fifth ownership interest therein. The reason stated by Ms. Matthews for this action is that defendants have failed to assist her in complying with an order of the district court having jurisdiction over the succession proceeding to inventory assets of the estate. Failure to comply with a court order is a constructive contempt of court as defined by LSA.C.C.P. art. 224. Constructive contempt of court is punishable under LSA-C.C.P. art. 225 only after the trial by the judge of a rule against the offender to show cause why he should not be adjudged guilty of contempt of court. No proof has been submitted of such action having been taken against Walter Horrell before the Orleans Parish district court. In light of Walter Horrell's ownership interest in the property Ms. Matthews seeks to have him evicted from, we believe a judgment from the Orleans Parish district court ruling on this issue is a condition precedent to an eviction proceeding under the particular facts and circumstances of this case.
Our decision is in accord with the Second Circuit's opinion in Coon v. Miller, 175 So.2d 385, 386-87 (La.App. 2 Cir.), writ refused, 247 La. 1089, 176 So.2d 145 (1965). In that case, the administrator of the decedent's succession brought suit to evict the surviving spouse from the community property home in which she owned an undivided one-half interest as surviving widow in community with the deceased. In ruling in favor of the surviving spouse, the Second Circuit reasoned that "it is well established that a co-owner of real property is entitled Co the occupancy thereof." Coon v. Miller, 175 So.2d at 386. Further quoting the supreme court's opinion in Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955), the Second Circuit stated, "the co-owner *76 who takes possession of the common property does not have to account to his coproprietor, because [t]he right of occupancy is vested in him by virtue of his ownership." Thus, the Second Circuit concluded, "On the basis of the above authorities and others to the same effect, it must be concluded that a co-owner cannot be divested of possession by an action of eviction. . . . A co-owner deprived of the possession and the benefit of property has a remedy by a suit for partition. . . ." Coon v. Miller, 175 So.2d at 386-87. In refusing supervisory review of the case, the Louisiana Supreme Court stated, "On the facts found by the Court of Appeal the result is correct." Coon v. Miller, 247 La. 1089, 176 So.2d 145 (1965).[11]
Furthermore, the historical background of the eviction action in Louisiana reinforces our interpretation. The precursor to the Louisiana Code of Civil Procedure eviction articles was Act No. 298 of 1938, commonly known as the "Share Croppers Act."[12]See Duvic v. Home Finance Service, 23 So.2d 790, 791 (La.App.Orl.1945). In Duvic it was noted that the remedy granted by Act No. 298 of 1938 is limited to cases where the occupant sought to be ejected is in illegal possession. The Duvic court stated, "Act No. 298 of 1938 grants to owners of property a summary remedy of ejectment in cases . . . and provides a speedy method for the ouster of illegal possessors, thus relieving landowners of the burdensome expense and delay occasioned by a petitory action, in matters where the possessor has no semblance of claim to title or possession." Duvic v. Home Finance Service, 23 So.2d at 791-92.
The concept that eviction is a remedy available against illegal possessors of immovable property remains a part of the current eviction provisions, as reflected by LSA-C.C.P. art. 4731(A), which provides in pertinent part: "If the lessee or occupant fails to comply with the notice to vacate required under this Title, or if the lessee has waived his right to notice to vacate by written waiver contained in the lease, and has lost his right of occupancy for any reason, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause *77 why he should not be ordered to deliver possession of the premises to the lessor or owner." (Emphasis added.)
Further, the eviction procedure is limited by LSA-C.C.P. art. 4705, which provides in part that "nothing in this Title shall be construed to conflict with the provisions of Articles 3651 through 3664." Since LSA-C.C.P. arts. 3651-3664 govern petitory and possessory actions, it must be concluded that questions regarding the ownership of immovable property or the right to possession of immovable property were not intended by the legislature to be litigated in eviction proceedings.[13]
As indicated hereinabove, Walter Horrell's purpose in occupying the property was disclosed during trial as in furtherance of his ownership interest; no proof was submitted to the trial court that he has been dispossessed of that interest. Because we find in the instant case that Ms. Matthews failed to prove that the purpose of Walter Horrell's occupancy has ceased, we conclude that the trial court erred in ordering eviction. Accordingly, the eviction of defendants should be reversed and suit against defendants dismissed. Having decided this appeal on this basis, we find it unnecessary to address other issues raised in this appeal.[14]

CONCLUSION
For the reasons assigned herein, we deny plaintiff/appellee's motion to supplement, reverse the trial court judgment ordering eviction of defendants, and remand the matter to the trial court with instructions to dismiss the suit. All costs of this proceeding are to be borne by Lisa C. Matthews.
MOTION TO SUPPLEMENT DENIED; JUDGMENT OF EVICTION REVERSED; REMANDED WITH INSTRUCTIONS.
PETTIGREW, J., concurs in the results and assigns reasons.
DOWNING, J., concurs and assigns reasons.
PETTIGREW, J., concurring.
Although I am of the opinion that much of the majority's discussion on "successions" and "evictions" is dicta, I concur with the results reached by the majority in reversing the trial court and remanding this case to the trial court.
In my humble opinion, the provisional administratrix failed to carry her burden of proof in legally justifying the eviction of an heir, co-owner of the property, which fell within and under the administration of the Succession of Horrell.
Contrary to Judge Downing's concurring opinion, I am of the opinion that a succession representative is entitled to possession of immovable property belonging to a succession and to enforce the right of possession even as against forced heirs, co-owners. See La.Code Civ. P. arts. 3191, 3211, and 3221. In particular, I am of the opinion this is true when the heir, co-owner is destroying or damaging the immovable property that falls within the succession. *78 Simpson v. Colvin, 138 So.2d 438 (La.App. 3 Cir.1962), which was cited with approval by this court Matter of Succession of Bickham, 506 So.2d 910 (La.App. 1 Cir.1987), rev'd on different grounds, 518 So.2d 482 (La.1988) (in particular, on the issue of full faith and credit of foreign judgments).
For the foregoing reasons, I concur in the results only reached by the majority.
DOWNING, J., concurs and assigns reasons.
I agree with the result of this case. The legal question is whether a succession administrator may evict a co-owner. The answer is no. See Coon v. Miller.
NOTES
[1] The trial court appointed Hibernia National Bank as administrator, but Hibernia never accepted the appointment. The remaining heirs substituted themselves as plaintiffs on April 15, 1997. And thereafter, the Orleans Parish district court appointed Ms. Matthews as administrator on July 3, 1997. Horrell v. Horrell, 99-1093, p. 3 (La.App. 1 Cir. 8/15/01), 808 So.2d 363, 373 (on rehearing), writ denied. 2001-2546 (La.12/7/01), 803 So.2d 971.
[2] While the instant proceeding was ongoing, Walter Horrell filed a separate possessory action against Ms. Matthews, in which he also sought injunctive relief. Walter Horrell's demands in that suit were denied, and the judgment of the district court has been affirmed by this court in a separate unpublished opinion. See Horrell v. Matthews, XXXX-XXXX (La. App. 1 Cir. 8/15/07), 962 So.2d 512 (table).
[3] On January 15, 2007, appellee, Lisa C. Matthews, filed a "Motion to Dismiss Suspensive Appeal," and on March 21, 2007, this court dismissed the suspensive appeal, converting it to a devolutive appeal, for failure of appellants to timely file the appeal bond set by the trial court. Ms. Matthews' accompanying "Motion to Supplement Appellee Brief" was referred to the merits of this appeal. Because the motion to supplement was based on and addressed issues raised by appellants that, because of our ruling herein, we find unnecessary to reach, we deny the motion to supplement.
[4] "`Occupant' includes a sharecropper; half hand; day laborer; former owner; and any person occupying immovable property by permission or accommodation of the owner, former owner, or another occupant, except a mineral lessee, owner of a mineral servitude, or a lessee of the owner. . . ." LSA-C.C.P. art. 4704.
[5] Ms. Matthews admitted in her testimony that any "permission" she might have given to the Horrells for occupancy of the property at issue was "tacit." Walter Horrell testified that there had never been any lease or other contractual relationship between himself and Ms. Matthews.
[6] "In the absence of valid testamentary disposition, the undisposed property of the deceased devolves by operation of law in favor of his descendants, ascendants, and collaterals, by blood or by adoption, and in favor of his spouse not judicially separated from him, in the order provided in and according to the following articles." LSA-C.C. art. 880. "Descendants succeed to the property of their ascendants. They take in equal portions and by heads if they are in the same degree. They take by roots if all or some of them succeed by representation." LSA-C.C. art. 888. See also LSA-C.C. arts. 934-938, and 1292.
[7] "A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided in this Chapter." LSA-C.C.P. art. 3261. The phrase "for any other purpose" means any other lawful purpose or reason of necessity; it does not give to the executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient. In re Succession of Boyter, 33,749, p. 4 (La.App. 2 Cir. 8/23/00), 766 So.2d 623, 626 (citing Succession of Pipitone, 204 La. 391, 399, 15 So.2d 801, 803-804 (1943)).
[8] The order of the Orleans Parish district court was filed into evidence and did not so state; no other proof was submitted that it was the intent of that court to extend its prior order in such a manner.
[9] Ownership is transmitted by operation of law at the moment of death to heirs and legatees designated by the Code, regardless of whether they have seizin of a particular succession or whether they can ever have seizin. For example, although a legatee under a particular title cannot acquire seizin, he has ownership of the thing bequeathed to him from the day of the testator's death. In order to be eligible for seizin, an heir must be either a forced heir, universal legatee or legitimate heir; and the latter two classes acquire seizin only in default of those preferred to them. Whether an heir acquires seizin depends, therefore, not on his ownership of succession property, but on whether he is a member of the class of heirs entitled to seizin of a particular succession according to the codal order of priority. Baten v. Taylor, 386 So.2d 333, 340 (La. 1979). Seizin is not ownership, however, but the legal investiture of one class of heirs with possession of the succession upon the death of the deceased, enabling the heirs who acquire seizin, from the instant of death, to bring all the actions which the deceased could have brought. Baten v. Taylor, 386 So.2d at 339-40.
[10] We note the primary objective of all procedural rules should be to secure to parties the full measure of their substantive rights. It bears remembering that rules of procedure exist for the sake of substantive law and to implement substantive rights, not as an end in and of itself. Procedure should always be indeed the "handmaiden of justice." Unwired Telecom Corp. v. Parish of Calcasieu, XXXX-XXXX, p. 10 (La.1/19/05), 903 So.2d 392, 401.
[11] Although we note that the Third Circuit ruled differently in the case of Simpson v. Colvin, 138 So.2d 438 (La.App. 3 Cir. 1962), the decision was forcefully criticized by Frederick William Swaim, Jr. and Kathryn Venturatos Lorio in 10 La Civ. L. Treatise, Successions And Donations, § 5.5 Weakening of the concept of seizin. The Simpson case has been cited only once by this court in an opinion that was reversed by the supreme court. See Matter of Succession of Bickham, 506 So.2d 910 (La.App. 1 Cir.1987), reversed, 518 So.2d 482 (La. 1988). We believe the Second Circuit approach to be the sounder legal analysis, and we reject Simpson v. Colvin to the extent it conflicts with Coon v. Miller and the opinion expressed herein.
[12] Former Louisiana Revised Statutes 13:4911 to 4926, entitled "Ejectment and Removal of Tenants or Occupants" (including the "Share Croppers Act"), were repealed by 1960 La. Acts, No. 32, § 2, effective January 1, 1961. The "Share Croppers Act," LSA-R.S. 13:4911, previously provided:

When any share-cropper, half hand, day laborer, or any occupant of land holding through the accommodation of the owner, or any other occupant other than a tenant or lessee, shall be in possession of any house, building or landed estate, after the purpose of such occupancy and possession shall have ceased and terminated, whether for reason of breach or termination of contract, or otherwise, and the owner of such house, building or landed estate so occupied and possessed, or his agent, shall desire to obtain possession of the premises, he shall demand and require in writing such occupant or possessor to remove from and leave the same, allowing him five calendar days from the day such notice is delivered.
See Waller v. Chandler, 94 So.2d 502, 502 (La.App. 1 Cir.1957).
[13] This intent is evident, by way of illustration, when it is considered that trial courts of limited jurisdiction are vested with authority to adjudicate eviction actions (where the amount in dispute does not exceed the court's jurisdictional limit) by LSA-C.C.P. art. 4844; however, as stated in LSA-C.C.P. art. 4847, trial courts of limited jurisdiction do not have jurisdiction over "[a] case involving title to immovable property."
[14] We also find it unnecessary to decide and we express no opinion herein as to whether other facts and circumstances may exist in which a succession representative can acquire the right to evict an heir to succession property.